**KEETCH METAL WORKS OF DALLAS, INC., Appellant,**

**v.**

**Robert B. YATES et al., Appellees.**

**No. 16332.**

Court of Civil Appeals of Texas.

Dallas.

April 17, 1964.

McDonald, Sanders, Nichols, Wynn & Ginsburg, Fort Worth, for appellant.

Watts, Stallings & Maloney, Julian F. Foster and Woodruff, Hill, Bader & Kendall, Dallas, for appellees.

DIXON, Chief Justice.

This appeal calls on us to construe Article 5160, Vernon's Ann.Civ.St. as amended in 1959.

Keetch Metal Works of Dallas, Inc., hereinafter called Keetch, is a subcontractor under B & M Service, which company is itself a subcontractor under a prime contractor, Yates Construction Company, hereinafter called Yates. Keetch seeks to hold Yates, the prime contractor, and the surety on Yates' payment bond liable for retainage as provided in Article 5160, V.A. C.S.

After a non-jury trial judgment was rendered in favor of Yates and his surety on the ground that Keetch had not complied with the requirements of the statute in regard to notices applicable to a claimant who does not have a direct contractual relationship with the prime contractor. Art. 5160, section B(b), V.A.C.S.

Appellant, who gave the notice provided in Section B(c) of the statute, contends that he was not required to give the notices provided for in Section B(b).

All the material facts have been stipulated. In September 1959 Robert B. Yates, doing business as Yates Construction Company, as prime contractor, entered into a written contract with the Irving Independent School District for the construction of a high school for a consideration of $2,613,872. Yates duly executed a payment bond as provided by Article 5160, V.A.C.S. with National Surety Corporation as surety. The bond obligated Yates and his surety to make payment promptly to all claimants supplying labor and material to Yates, the prime contractor, or to a subcontractor in the prosecution of the work.

In October 1959 Yates entered into a contract with B & M Service Company, a subcontractor, whereby the latter company agreed to furnish certain labor and materials for an agreed sum of $490,000.

In November 1959 B & M Service Company entered into a contract with appellant

Keetch whereby Keetch agreed to furnish and install certain equipment at the agreed price of $49,500. This contract provided for monthly payments by B & M Service Company to Keetch of 90 percent of the value of labor and material furnished each month, each payment to be made on the 10th of the month following the month of performance. The 10 percent retained each month should be payable by B & M Service Company to Keetch thirty days after the entire completion and final acceptance of the job.

All the monthly payments of 90 percent were duly made by B & M Service Company to appellant Keetch. But the 10 percent retainage amounting to $4,950 has not been paid. Appellant Keetch has sued for said amount, alleging that he has met all the requirements of Article 5160, V.A.C.S., therefore Yates as prime contractor, and National Surety Corporation as surety on Yates' bond, are obligated to pay the 10 percent retainage which B & M Service Company has failed to pay, though the job has been completed and accepted.

It is undisputed that appellant Keetch complied with the provisions of Art. 5160, subd. B(c), V.A.C.S., but that it did not comply with the provisions of Art. 5160, subd. B(b), V.A.C.S.

## OPINION

Prior to the amendment of 1959 Article 5160, V.A.C.S. made no distinction between claimants who contracted directly with a prime contractor and claimants who contracted only with a subcontractor without having any contractual relationship with the prime contractor. Under the statute as then written a prime contractor, though he might have no knowledge of the indebtedness of his subcontractor, might pay his subcontractor in full what was owed only to find subsequently that a claim had been filed with the County Clerk by a person or persons who had dealt only with the subcontractor. Thus the prime contractor or his surety would have to pay the same debt twice.

It was to correct such a situation that the Legislature amended the statute in 1959. This is shown by the emergency clause which we here quote:

"The fact that contractors on public works have suffered enormous losses by virtue of having made regular and timely payments to subcontractors, who in turn fail to pay their suppliers and subcontractors, or who pay their suppliers and subcontractors from funds, thus received, on running account in lieu of applying said payments to and for the account of work for which the payment bond is to be made, and the fact that the provisions of this Act are necessary to provide simple direct methods of giving notice and perfecting claims of laborers, materialmen, and subcontractors of all classes create an emergency and an imperative public necessity * * *."

Under Section B(b) of the amended statute a claimant such as appellant here, who does not have a direct contractual relationship with the prime contractor, must give "Additional Notices." If the claimant has an agreement between himself and any subcontractor whereby payments are not to be made in full in the month following the performance or delivery of materials (in other words, if the agreement provides for a "retainage" of 10 percent or less), the claimant must give written notice to the prime contractor within thirty-six days following performance or delivery that he, the claimant, has an agreement with the subcontractor providing for the retention of part of the funds.

■ We think it is obvious that the purpose of Section B(b) is to put the prime contractor on notice that the claimant has a retainage agreement with the subcontractor. The amount retained, or to be retained, may not yet be due and payable. In fact in many cases the retainage will not be due and payable until completion and acceptance of the main job, which could be many

months in the future.[1] By serving the notices the claimant does not file a claim for a debt past due and unpaid. He merely alerts the prime contractor to the fact that the funds retained will be due and owing to the claimant after completion and acceptance of the job. Thus the prime contractor, being forewarned, may protect himself from double liability by withholding full payment to the subcontractor until the subcontractor discharges his retainage debt to the claimant.

■ The purpose of Section B(c) of the statute is quite different. It provides that a claimant must give written notice within ninety days *after* final completion of the job that the money retained is due and unpaid. It is more than a notice of the terms of the contract, as were the notices under Section B(b). The notices under Section B(c) are in effect the filing of a claim for an amount of money, previously retained, which has become due and payable, but has not been paid. The section expressly includes claimants who have dealt with a subcontractor.

■ We have concluded that a claimant who does not have any direct contractual relationship with a prime contractor must give to the prime contractor the notices provided in Section B(b) of Art. 5160, V.A.C.S. as a condition precedent to the en-forcement of liability of the prime contractor and his surety. Thus the prime contractor will be informed of the retainage feature in the claimant's agreement with the subcontractor. Being so informed the prime contractor will know not to pay the subcontractor in full, but to withhold a sum sufficient to pay the claimant the retainage in case the subcontractor fails to do so.

Of course if the subcontractor pays claimant the retainage when it finally becomes due and payable, there will be no need for claimant to file the notice provided for in Section B(c) of the statute. Claimant will have been paid in full. But in case the subcontractor defaults in payment of the retainage when due, the claimant must then give the notice provided in Section B(c) of the statute. This is necessary to perfect his claim for money past due and unpaid.

It is undisputed in this case that appellant Keetch did not give the notices required in Section B(b) of Art. 5160, V.A.C.S. We hold that the giving of such notices was a prerequisite to his recovery against Yates, the prime contractor, and his surety. Therefore the court properly rendered judgment in favor of Yates and his surety.

The judgment is affirmed.

Affirmed.

1. Appellees in their brief describe a hypothetical situation which strikingly illustrates the hazard to which prime contractors were subjected prior to the amendment of 1959. We quote from appellees' brief:

"By a hypothetical situation, we believe we may demonstrate the necessity for these provisions. Assume that Prime Contractor is employed to construct a large public building and that the estimated time for completion of the contract is three years. Assume, further, that Prime Contractor enters into a contract with Subcontractor for excavation of the ground upon which the building is to be constructed; that Subcontractor, in turn, contracts with Claimant to rent from him certain earth-moving equipment. The contract between Subcontrac-tor and Claimant provides for a retainage. The work of excavation is then completed within the first three months of the contract and after its completion, and after Prime Contractor has signified his acceptance of the excavation, Prime Contractor pays Subcontractor.

"If Appellant's contentions are correct, 33 months later, when the entire job is completed, Claimant will have an additional 90 days, under Article 5160(B)(c) within which to file his claim for the retainage even though Prime Contractor has no knowledge that Subcontractor rented the equipment or had any dealings with Claimant, that there was any agreement for a retainage, or that Claimant had not been fully paid at the time the work was done and completed."