**W. J. SELDON et al., Appellants,**

**v.**

**S & S AGGREGATES COMPANY, Appellee.**

**No. 4290.**

Court of Civil Appeals of Texas.

Eastland.

May 2, 1969.

Rehearing Denied June 6, 1969.

House, Mercer, House & Brock, R. L. House, San Antonio, for appellants.

Anderson, Henley, Shields, Bradford & Pritchard, C. A. Searcy Miller, Dallas, Cayton, Gresham & Fulbright, Willis E. Gresham, Jr., Lamesa, for appellee.

GRISSOM, Chief Justice.

In February 1965, W. J. Seldon was the general contractor for a state highway project in Dawson County. W. N. Fulfer was his subcontractor for construction of a highway between Lamesa and the Martin County line. S & S Aggregates Company leased a rock crusher to Fulfer for use on said project. The lease recited that the leased machinery was to be used on Texas State Highway Project F638(12) and F1018(6) in Dawson County. Fulfer used the rock crusher in the performance of his

contract. Fulfer did not pay the rent for the rock crusher and S & S Aggregates Company sued Seldon, the General Contractor, and Fidelity and Deposit Company of Maryland, the surety on his payment bond, for the unpaid rent. Plaintiff's cause of action is based on the right granted one renting construction equipment "used in the direct prosecution of the work at the project site, or reasonably required and delivered for such use" by Article 5160, subd. C(b) (3).

In February 1968, the court rendered a partial summary judgment denying plaintiff recovery of rent for certain periods and also attorney's fees. In June 1968, the court rendered judgment for the plaintiff, on a jury verdict, for rent from July 9th to September 29th, 1965, for $6,666.66 against Seldon and said surety. The judgment contained a recital that the court had theretofore rendered a partial summary judgment to the effect that plaintiff could not recover the rent for May 9th to June 9th and June 9th to July 9th and attorney's fees. From the portion of the judgment against them Seldon and his surety have appealed.

Appellants' principal contention is that the leased equipment was not "used on the project site", that is, it was not placed on the road which they were building; that the crusher was used only at the Stewart rock quarry, about eight miles from the road, and therefore plaintiff was not entitled to recover rent from the general contractor and his surety. The Stewart pit, where the rock crusher was operated by Fulfer, was eight miles from the road which was being constructed. From this fact appellants conclude that rock crusher was not "used on the project site" and therefore appellee's claim was not within the requirements of Article 5160 for creation of a cause of action for rent of construction equipment used in prosecution of public works. Appellants say the road that was being built was the project site and only when the rock crusher was used while on that road could the lessee have a cause of action for rent under Article 5160, subd.

C(b) (3). Appellants also say, and as to this we think correctly, that before Article 5160 was amended in 1959 one renting equipment to a subcontractor for use on a project site could not recover his rent from the general contractor or the surety on his payment bond. From all of this appellants conclude that, since said amendment created such a cause of action, a lessor must show strict compliance with its terms, because it is in derogation of the common law. In support thereof they cite Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084; Trinity Road & Bridge Co., Inc., v. Watson, Tex.Civ.App., 341 S.W.2d 956, and the recent Supreme Court decision in New Amsterdam Casualty Company v. Texas Industries, Inc., 414 S.W.2d 914.

■■ We disagree with appellants' contention that the burden was upon the plaintiff to strictly comply with the statute. Article 5160 subd. C(b) (3) gives to one renting to a subcontractor construction equipment "used in the direct prosecution of the work at the project site, or reasonably required and delivered for such use" a cause of action against his general contractor and the surety on the general contractor's payment bond for unpaid rent. Article 5160 is known as the McGregor Act. It was evidently patterned after the Miller Act, 40 U.S.C.A. Sections 270a and 270b. Said statutes were intended to give causes of action against such a contractor and surety under contracts for construction of public works, state and federal, where the one furnishing labor, or material, or renting equipment could not have a lien on the thing built because it was a public work project, such as the state highway in this case, and to provide a simple, direct way for collection of their debts. Contrary to appellants' contention, Article 5160, as amended in 1959, is highly remedial in nature and clearly reflects the intention to change the public policy of Texas and provide a simple, direct method of giving notice and perfecting the claims of laborers, materialmen, and those renting equipment used in constructing public works. United Benefit

Fire Insurance Company v. Metropolitan Plumbing Company, Tex.Civ.App., 363 S. W.2d 843, 847; United States for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Company, 8 Cir., 255 F.2d 137, 142; United States for Use and Benefit of J. P. Byrne & Co. v. Fire Association of Philadelphia, 2 Cir., 260 F.2d 541, 544; United States Fidelity and Guaranty Company v. Parker Brothers & Co., Inc., Tex.Civ.App., 437 S.W.2d 880, 881; Moran Towing Corporation v. M. A. Gammino Construction Company, 1 Cir., 363 F.2d 108, 115.

■■ The record shows the rock crusher leased by S & S Aggregates Company to Fulfer was used by Fulfer at a site selected and approved by the State highway department as a place to obtain and crush rock for use in building said road for the State by Seldon and Fulfer. We think, under the circumstances, that the Stewart pit, where the approved rock was found and the equipment was so used, was a part of the project site. It was one of the material sources marked on the state highway departments' map as an approved place from which rock located there could be crushed and placed on said road. The material located there had been tested and approved by the highway department and that place had been designated by the highway department as an approved source of material to go into the road. The Stewart pit was reasonably close to that roadway. Article 5160 provides that a prime contractor, such as Seldon, entering into a contract with the State for prosecution of any public work shall execute a payment bond for protection of all claimants supplying labor and material "in the prosecution of the work provided for in said contract." It provides that every claimant who has furnished labor or material "in the prosecution of the work provided for in such contract in which a payment Bond is furnished" shall have the right to sue the principal and the surety on his payment bond for his debt. Section C defines a claimant as anyone having a direct contractual relationship with the prime or sub-contractor to furnish labor and material "as a part of the work." Material is defined as (b) (1) "material incorporated in the work, or consumed in the direct prosecution of the work, or ordered and delivered for such incorporation or such consumption." It says that material includes a thing specially fabricated for use as a part of a public work so as to be reasonably unsuitable for use elsewhere, even though it is not delivered or incorporated into such public work. C(b) (2) Section (3), which is plaintiff's prime authority for this suit, was added in 1959. It provides for recovery of

"Rent * * * for construction equipment, *used in the direct prosecution of the work at the project site, or reasonably required and delivered for such use."*

Subdivision F directs the contracting authority to furnish a copy of the payment bond to any person who makes an affidavit that he has "rented equipment—for such work." Section G, which fixes the venue of such suits, provides that they shall be brought in the county "in which the project or work, or any part thereof, is situated." Article 5160, as amended, is highly remedial. It was intended, as stated in the emergency clause, "to provide a simple direct method of giving notice and perfecting claims" of those for whose benefit the amendment was enacted, including those renting construction equipment used in the prosecution of the work, or required and delivered for such use. In New Amsterdam Casualty Company v. Texas Industries, Inc., Tex., 414 S.W.2d 914, 916, relied on by appellants, our Supreme Court did hold that such a claimant could not recover attorney's fees, for the simple reason that no statute authorized recovery of attorney's fees and there was no contract therefor. We cannot agree with appellants that the rock crusher had to be placed on the highway in order for the lessor to acquire a cause of action under the statute. The New Amsterdam case does not support appellants' contention that Article 5160 should be strictly construed

against such claimants. Our Supreme Court said in that case that the statute was "enacted for the purpose of guaranteeing full and prompt payment to * * * claimants on public works projects." We conclude that, within the meaning of the statute, the rented construction equipment was (3) "used in the direct prosecution of the work at the project site, or reasonably required and delivered for such use;" that, since the rock crushing equipment was rented to Fulfer and placed at a rock crushing site selected and approved by the state highway department, as shown by its map with reference to which the parties necessarily contracted, demonstrates that it was intended for the rock at the Stewart site to be crushed there and used on the highway and, the construction equipment having been rented and used there for that purpose, the claim of the lessor should be held to be within the protection of the statute. We hold that plaintiff was entitled to recover from the general contractor and the surety on his payment bond all the unpaid rent, provided plaintiff has substantially complied with notice requirements and appellants have not been harmed by defects in the time and manner of giving notice.

█ Appellants present many points contending, among other things, that appellee is not entitled to recover rent for various periods for which it obtained judgment because notice for said periods was not given after the 10th of the following month; because there was no evidence, or, in the alternative, the evidence was insufficient to support findings prerequisite to a judgment for such periods; because the suit was prematurely filed and therefore the court did not have jurisdiction to render judgment for certain rental periods, and the like.

All of these contentions rest upon appellants' conclusion that the statute must be strictly interpreted and complied with before one renting construction equipment "used in the direct prosecution of the work at the project site or reasonably required and delivered for such use" can recover rent from the contractor and the surety on his payment bond. We hold to the contrary.

Sixty days had not elapsed after the August and September rent payments became due when the suit was filed. However, the case was not tried for months after the suit could have, in any event, been timely filed. When the point was urged in the first trial it was, in effect, moot because the entire claim had then matured. The point was not timely raised by plea in abatement. When the case was again tried and the payment here appealed from was rendered many months had passed since the time when the suit could have in any event been properly filed. Appellants cite Employers' Liability Assurance Corporation v. Young County Lumber Company, 122 Tex. 647, 64 S.W.2d 339, in support of their contention that the judgment should be reversed because the suit was prematurely filed. That case dealt with Article 5160 as it existed before the 1959 amendment, which amendment, we have held, was remedial and intended to change the previously existing public policy. Furthermore, in that case a plea in abatement was timely filed raising the question of its premature filing. In any event, the question is not one of jurisdiction, because when suit was filed the June and July claims had been due for sixty days. Furthermore, when the case was tried on its merits the remaining claims had also been due for more than sixty days. It would not accord with the evident intention of the amendment to require appellee to file a separate suit for each month's rent. The authorities holding that the McGregor Act, Article 5160, as amended in 1959, as well as the Miller Act, are highly remedial and are to be liberally interpreted to the end that one furnishing labor, or material, or renting equipment for construction of public works should recover on a contractors' payment bond, are persuasive of a conclusion contrary to appellants' contentions. It is clear that ap-

pellants were not hurt by the premature filing of the suit.

It is evident, as we held on the prior submission of this case, that it was not established that the lease was a chattel mortgage. Seldon v. S & S Aggregates Company, Tex.Civ.App., 410 S.W.2d 231. See also Purity Creamery Co. v. Hays, Tex. Civ.App., 4 S.W.2d 1056, 1057. Points to that effect are overruled.

■■ We overrule appellants' points in which they contend reversible error was committed by exclusion of testimony of Mr. Seldon as to intent. Evidence of intent which embodies a legal conclusion or the intention of another is not admissible. Browning v. Currie, Tex.Civ.App., 140 S.W. 479; Howard v. Sears, Tex.Civ.App., 196 S.W.2d 105 (Ref. n. r. e.). We conclude that in any event such exclusion comes within the harmless error provision of Texas Rules of Civil Procedure 434.

We think appellee substantially complied with the statutory requirements and that reversible error is not shown.

We have considered and overrule all of appellants' points. The judgment is affirmed.