**J. W. BARFIELD dba J. W. Barfield Asphalt Contractor, et al., Appellants,**

v.

**George HENDERSON dba George Henderson Construction Co., Appellee.**

No. 636.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 9, 1971.

Rehearing Denied Oct. 21, 1971.

Bonner & Ball, Nile E. Ball, Harlingen, for appellants.

Nielsen & McCormick, Alvin F. McCormick, Raymondville, for appellee.

## OPINION

BISSETT, Justice.

This case involves the rights of several claimants to funds retained by Willacy County Navigation District, a state governmental authority, pursuant to a public works contract.

J. W. Barfield, d/b/a J. W. Barfield Asphalt Contractor, plaintiff, filed suit against Willacy County Navigation District, George Henderson, d/b/a George Henderson Construction Company, Hanover Insurance Company, Raymondville State Bank, White's Mines and The Roy Klossner Company, defendants, asserting a claim to funds retained and held by Willacy County Navigation District under a public improvements contract with George Henderson Construction Company.

There were no disputed facts. The contract was in writing. It was executed on February 12, 1969, by Willacy County Navigation District, as owner, and by George Henderson Construction Company, as contractor. It provided for the construction of certain improvements to the Port Mansfield Airport in Willacy County, Texas. All work pursuant to the contract was completed during November 1969, and the improvements were accepted by the Navigation District shortly thereafter. The total contract price was $28,437.96. The Navigation District retained $6,853.71 of the contract funds due the contractor.

Hanover Insurance Company executed a "performance bond" and a "payment bond" as surety for George Henderson Construction Company, the prime contractor on the project.

Plaintiff was a subcontractor on the project; he sued to recover $2,627.33. White's Mines furnished certain materials to the contractor; its unpaid claim amounted to $1,966.44. The Roy Klossner Company furnished certain equipment to the contractor; it claimed $1,152.02 to be due. The Raymondville State Bank claimed that a sum in excess of $8,000.00 on a note was due it by the contractor.

All defendants other than George Henderson filed answers. The answering defendants who were asserting claims to the retained funds properly set up their claims in their respective pleadings. The Navigation District denied any liability, deposited the retained funds with the clerk of the trial court, and asked that an attorney fee of $250.00 be allowed it, to be paid out of the retained funds.

Plaintiff and the defendants, White's Mines, The Roy Klossner Company and Raymondville State Bank, filed motions for summary judgment on their respective claims.

Hanover Insurance Company did not make any claim to the retained funds, refused to pay any part of the claims asserted by the claimants, and also filed a motion for summary judgment whereby it

asked that it be discharged from any liability. The trial court granted the motions for summary judgment filed by Raymondville State Bank and by Hanover Insurance Company. The motions filed by plaintiff and by the defendants, White's Mines and The Roy Klossner Company, were denied. Judgment was rendered and entered, whereby among other holdings, (a) an attorney fee of $250.00 was allowed in favor of the Navigation District and was ordered paid out of the deposit to the attorneys for the Navigation District; (b) the remaining balance ($6,603.71) of the money paid into the registry of the court was awarded to Raymondville State Bank; and (c) all claims against the Navigation District and Hanover Insurance Company were denied.

J. W. Barfield, White's Mines and The Roy Klossner Company have duly and timely perfected an appeal to this Court from that part of the judgment that awards $6,603.71 to the Raymondville State Bank. We affirm.

The sole question presented in this appeal is phrased by appellants in their brief, as follows:

"Does the subject public improvement contract give the subcontractors and materialmen a paramount interest in the retention fund to satisfy unpaid claims as against a bank which has advanced funds to the contractor in the course of work and was assigned the contract payments as security?"

We answer the question in the negative.

The contractor borrowed various sums of money from the Raymondville State Bank in order to obtain funds for operational purposes. Several promissory notes, secured by a security agreement, were executed by the contractor payable to the order of the bank. Financing statements evidencing such security agreement were executed by the contractor, one of which was filed in the office of the County Clerk of Willacy County on March 7, 1969, and another was filed in the office of the Secretary of State on March 10, 1969. Both financing statements gave notice that all moneys due contractor by the Navigation District for work performed under the contract had been assigned to the bank. All of these notes were paid by the contractor except the one dated June 4, 1969, in the original principal sum of $8,000.00, due on July 10, 1969, bearing interest as therein provided, and secured by a security agreement, duly executed by the contractor. Written notice of the assignment of all moneys due the contractor under the contract was given by the bank to the Navigation District on March 5, 1969.

On May 3, 1969, J. W. Barfield entered into a verbal contract with the contractor whereby he agreed to furnish certain material and perform certain services as a subcontractor under the contract. He commenced the work on June 9, 1969, completed the same on June 11, 1969 and submitted his invoice to the contractor on June 12, 1969. The contractor paid him $2,500.-00 on June 15, 1969, leaving a balance due of $2,627.33, which was never paid. J. W. Barfield, by letter dated September 2, 1969, notified the Navigation District that he had not been paid. Under letter dated November 5, 1969, he advised Hanover Insurance Company of the balance owed him by the contractor.

White's Mines furnished materials to the contractor on May 26, 1969.

During the interval from April 15 to April 30, 1969, The Roy Klossner Company furnished the equipment to the contractor.

On December 19, 1969, the contractor, George Henderson, notified the Navigation District that he did not have the necessary funds with which to pay the bills then owing by him to creditors who had furnished labor and materials on the project.

Under the terms of the contract, the Navigation District was obligated to make periodic payments to the contractor as the work progressed but was authorized to re-

tain 10% of the value of the work and materials then incorporated in the improvements or on the job-site as of date of payment. In addition to the 10% retainage provision of the contract, the Navigation District was also authorized to withhold from such progress payments any sums of money necessary to protect itself in the event the contractor failed to pay promptly the subcontractors and materialmen who furnished labor, services and materials on or to the project. The contract contained a provision whereby the contractor would indemnify, save and hold harmless the Navigation District from all lawful claims of subcontractors and materialmen for services and materials furnished in the course of the construction of the improvements. In the event the contractor failed to pay such bills, the Navigation District had the option to pay the same and to charge contractor's account with any such payment. Final payment was due the contractor between the 30th and the 35th day after certification by the engineer on the project that the contract had been completed in accordance with the contract documents.

Appellants contend that it was the intention of the contracting parties to protect the subcontractors and materialmen by giving them an equitable lien on the retained funds. They argue that their claims are superior to the claim of appellee, who did not furnish labor or materials on the project, but loaned money to the contractor and took as security therefor an assignment of his contract rights to the money due him under the contract.

On the other hand, appellee contends that the appellants did not acquire or perfect any lien, equitable or otherwise, to the retained funds. It further says that none of the appellants complied with any statutory procedure so as to enable them to assert a personal right to the retained funds. Finally, it argues that even if it be held that appellants did perfect some species of lien to the retained funds or did establish some kind of personal right thereto, never-

theless appellee's security interest has priority because it is first in time.

There are two statutes, Article 5472a and Article 5160, Vernon's Ann.Civ.St., that afford protection to persons who furnish labor or materials to a contractor under a prime contract for the construction of public improvements. Although both statutes are designed to insure the payment of all persons who furnish labor or materials on public works contracts, they have a different scope and operation. 47 Tex.Jur.2d, Public Works and Contracts, § 54, p. 513.

Articles 5472a and 5160, were amended by Acts 1959, 56th Legislature, ch. 93, p. 155. Apart from some details not necessary to notice herein, the effect thereof was that after April 27, 1959, the effective date of the amendments, the lien on moneys due the contractor was available to persons who furnish labor and materials to a contractor in the construction of public improvements only if the prime contract did not exceed $2,000.00. Both statutes, as so amended, were in force and effect at all times pertinent to this case.

As amended, Article 5472a provides, in part, that any person furnishing labor or material, etc., to "any contractor under a prime contract where such prime contract does not exceed the sum of Two Thousand Dollars ($2,000) for any public improvements in this State" shall have a lien on the moneys, etc., due or to become due the contractor, provided the claimant gives the requisite written notice to the public officials whose duty it is to pay such contractor of his claim, with a copy of such notice to the contractor.

Also, as amended, Article 5160 provides, in part, that any " 'prime contractor,' entering into a formal contract in excess of Two Thousand Dollars ($2,000)" with the state or other named public bodies for the construction of public improvements shall give a performance bond "for the protection of the State or the governmental authority awarding the contract" and a payment bond "solely for the protection of all

claimants supplying labor and material as hereinafter defined, in the prosecution of the work provided for in said contract."

Article 5472a does not apply to the case at bar as the prime contract was for more than $2,000.00. Moreover, none of appellants gave notice of their claims in the manner required by this statute. No lien to the retained moneys was or could have been perfected by appellants under this statute.

Article 5160 does not give or create a lien on any funds due or to become due the contractor, nor does it provide for a lien against the property or the improvements constructed under a public works contract. It establishes a personal right to go against the bonds, the "performance bond" in the case of the governmental authority, and the "payment bond" in the case of persons who furnished labor or materials under the contract who are not paid therefor. We are not here concerned with the "performance bond." By complying with the provisions of this statute, any claimant as therein defined who furnishes labor or materials in the construction of public improvements as called for in the public works contract, in the event the claim therefor is not paid, upon the timely giving of the proper notice and the filing of sworn statements as provided by the statute, may sue both the principal and surety on the "payment bond." This statute makes no provision for the officials of the public body to withhold any funds due or to become due the contractor.

In the case at bar, the contract entered into was a formal contract, in writing, entered into by and between Willacy County Navigation District, a governmental authority and body politic and corporate, as owner, and by George Henderson, d/b/a George Henderson Construction Company, as prime contractor. The contract provided for the construction of public works. The contract price was for more than $2,000.00. Both a "payment bond" and a "performance bond" were furnished by the

contractor. The appellants have a direct contractual relationship with George Henderson, the contractor. Therefore, the case falls squarely within the purview of Article 5160. The protection of this statute was available to appellants.

■ The Legislature has seen fit to provide methods by which persons who furnish labor or materials for the construction of public improvements may be protected in payment of their debt claimed. In the instant case we are concerned only with the method afforded by Article 5160. This statute sets out what must be done by the claimants in order to bring themselves under the protection of the payment bond. Strict compliance with such requirements is essential to recovery on the bond. Union Indemnity Co. v. Rockwell, 57 S.W.2d 90 (Tex.Com. of App., 1933); United Tile Co. v. Kermit Independent School District, 273 S.W.2d 434 (Tex.Civ.App., El Paso, 1954, wr. ref. n. r. e.); Gulf Oil Corporation v. Austin Contracting Co., 326 S.W.2d 925 (Tex.Civ.App., Eastland, 1959, wr. ref. n. r. e.).

■ It is undisputed that appellants failed to give the required notices and sworn statements of account in accordance with the requirements of Article 5160. Therefore, we hold that they failed to perfect any claim on the payment bond furnished by Hanover Insurance Company, surety on the contract.

Appellants expressly admit that they did not perfect a claim against the surety on the performance bond. They tacitly admit that they did not perfect any claim against the surety on the payment bond.

Appellants cite several cases in support of their contention that they have an equitable lien on the retained funds. None of these cases are in point as there is a clear distinction between the facts in the cited cases and those in the instant case. Although one such case contains an excellent discussion on the creation of equitable liens, it was an action to foreclose a con-

**638**

tractual lien on personal property; it did not deal with the rights of unpaid claimants to retained moneys under a public works contract. In the other cases, the subcontractors, laborers and materialmen either perfected liens on the retained funds under Article 5472a or fixed their claims against the bond under Article 5160. The controversies in such cases involved either the rights of the claimants as against the surety (who had obtained an assignment from the contractor) to the retained funds, or the rights of the surety and various banks (who had loaned money to the contractor to enable him to carry on and complete the work) to such retained moneys. None of the cited cases are controlling of this case, and none are authority for the proposition that an equitable lien arises in a fact situation presented by the record in this appeal.

■ An equitable lien is founded on an express or implied contract that deals with or operates on some specific property. Equitable liens do not arise except out of a contract between the parties. Batson v. Coley & Wilson, 59 S.W.2d 445 (Tex.Civ. App., Waco 1933, n. w. h.); Vivion v. Nicholson, 54 Tex.Civ.App. 43, 116 S.W. 386 (San Antonio 1909).

In Bradley v. Straus-Frank Co., 414 S. W.2d 504 (Tex.Civ.App., Dallas, 1967, n. w. h.), cited by appellants in their brief, the Court says:

"It is well settled in our jurisprudence that an equitable lien may be created by any express agreement in writing which sufficiently indicates a person's intention to make some particular property a security for a debt or obligation. It is essential to the existence of an equitable lien arising from express contract that the agreement deal with specific property which must be so described that it can be identified and there must be an intention to create the lien which is clearly apparent from the language of the instrument itself together with the attendant circumstances. 36 Tex.Jur.2d, Liens, § 16, pp.

692–693; Berkey & Gay Furn. Co. v. Sherman Hotel Co., 81 Tex. 135, 16 S. W. 807; Industrial Lumber Co. v. Texas Pine Land Ass'n, 31 Tex.Civ.App. 375, 72 S.W. 875, error ref."

■ In determining the real purpose and intent of the parties to a contract, either express or implied, the courts are more concerned with the substance of the agreement rather than the form thereof. If the transaction resolves itself into a security, whatever may be its form, it is in equity a lien. The rule was stated by our Supreme Court in Eckford et al. v. Berry, 87 Tex. 415, 28 S.W. 937, as follows:

" * * * If, upon the whole case, it appears that the real purpose of the transaction was to secure the payment of a debt, the instrument will be held to be a mortgage, no matter what may be its form. * * *"

A later statement of the rule is found in First National Bank in Big Spring v. Conner, 320 S.W.2d 391, 394 (Tex.Civ.App., Amarillo, 1959, wr. ref. n. r. e.).

The case of Patterson v. Citizens' Nat. Bank of Lubbock, 236 S.W. 130 (Tex.Civ. App., Amarillo, 1922), held that the making of a specific promise to pay a debt out of a particular fund will not of itself give rise to an equitable lien on the fund. There, the Court said:

"It seems to be the well-settled law that a mere promise to pay a debt out of a particular fund will not operate as an equitable assignment pro tanto of the fund."

* * * * * *

"The authorities are equally clear that such an agreement will not itself be sufficient to establish an equitable lien on the fund. There must be something further to evidence the intention of the parties to charge the fund itself with the payment of the debt. * * *"

■ Equitable liens have as their foundation the general considerations of

right and justice as applied to the relations of the parties and the circumstances of their dealings. Such a lien will not be implied where there is an adequate remedy at law. Colleps v. George W. Smith Lumber Co., 185 S.W. 1043 (Tex.Civ.App., Beaumont, 1916); 36 Tex.Jur.2d, Liens, § 18, pp. 694–695.

 Appellants were not parties to the contract for the construction of public improvements to the airport. No particular property is described or designated in the contract as security for the debt or obligation of anyone. Under the contract as executed, the contractor simply agreed to pay all persons who furnished labor or materials on the project and the Navigation District was authorized to retain 10% of the progress payments and had the option to retain more than the 10% retainage in the event the contractor did not pay his laborers, subcontractors or suppliers. There is no language in the contract itself or in the attendant circumstances that shows any intention of the contracting parties to create a lien on the retained funds in the hands of the governmental authority as security for the payment of unpaid claims of persons furnishing labor or materials in the course of construction of the airport.

We know of no authority that will permit the creation of any lien, legal or equitable, on any moneys in the hands of a governmental authority in favor of any unpaid claimant who furnishes labor or materials on a public works contract where the prime contract is for a sum of money in excess of $2,000.00, as is the case here.

We cannot agree with the contention of the appellants. Equity follows the law, and as the only statute applicable to this case does not provide for a lien on the retained moneys in the hands of the governmental authority, we are unable, by any process of reasoning, to justify how an equitable lien could arise against such funds in favor of a person who was not a party to the contract. Appellants could have protected themselves by perfecting their claims against the payment bond. This, they did not do.

We therefore conclude and hold that, insofar as the retained moneys in the hands of the Navigation District are concerned, no lien, legal or equitable, was created or could be created in favor of appellants.

 We further hold that the subject public improvements contract did not give the subcontractors and materialmen a paramount interest in the retention fund to satisfy unpaid claims as against the Raymondville State Bank, who advanced funds to the contractor in the course of work and was assigned the contract payments as security. The trial court correctly entered judgment in favor of appellee.

Judgment of the trial court is affirmed.