**GENERAL ELECTRIC SUPPLY COMPANY, a Division of General Electric Company, a New York Corporation,**

v.

**EPCO CONSTRUCTORS, INC. and the Travelers Indemnity Company.**

Civ. A. No. 69–H–285.

United States District Court,
S. D. Texas,
Houston Division.

Sept. 9, 1971.

As Amended Sept. 23, 1971.

Tom D. Matthews, Matthews & Matthews, Dallas, Tex., and Raymond Kerr, Hodges & Kerr, Houston, Tex., for plaintiff.

T. Turner Pope, Kamp, Laswell & Howard, Houston, Tex., for defendant.

Joe B. Brack, Reid, Strickland, Gillett & Ramsey, Baytown, Tex., for intervenor.

## MEMORANDUM OPINION

BUE, District Judge.

This is an action brought pursuant to art. 5160, Vernon's Ann.Tex.Rev.Civ. Stat.Ann., known as the McGregor Act. Plaintiff herein sues both the surety and the prime contractor, seeking to recover either from the retained funds due and owing the subcontractor and debtor, A-All Electric Company, (hereinafter referred to as A-All) or to recover under the payment bond.

Epco Constructors, Inc. (hereinafter referred to as Epco), as prime contractor entered into a contract with San Ja-cinto Junior College District on June 9, 1967, at Pasadena, Texas, for certain additions to academic facilities known as Project No. Tex. 3–2410. In fulfillment of its statutory obligations, Epco furnished performance and payment bonds with Travelers Idemnity Company as surety. The payment bond is for the benefit of all materialmen, whether they furnish material to the prime contractor, Epco, or to a subcontractor.

In July, 1967, Epco contracted with R. C. McDowell, d/b/a A-All Electric Company, to supply electrical materials and perform the electrical work for completion of the project. The subcontractor, A-All, purchased from the plaintiff certain electrical materials and equipment for use on the project. Credit having been given for all payments and offsets, there was still due and owing to plaintiff for such materials and equipment the sum of $12,328.52. This sum includes a $26 item delivered late, for which plaintiff no longer seeks recovery. Thus, the sum which was claimed by General Electric was $12,302.52.

Plaintiff sent by certified mail notices to Epco and A-All on January 12, 1968, setting forth the amount due from the subcontractor as shown by statements of the account which were attached to the notices. Similar notices were mailed on February 14, March 14 and April 12, 1968, each of which set forth the current balance due to plaintiff from A-All.

On May 10, 1968, plaintiff mailed notices to Epco and A-All and to the surety. The May 10 notice consisted of a sworn statement of the account that it was true and correct, that all just and lawful offsets and payments and credits had been allowed, and of an itemized list of material showing unit prices and approximate date of delivery as well as copies of invoices.

The total amount of items on the itemized list of the May 10 notice was $14,344.81. After adjustments were made to reflect a payment on the account in the amount of $2,042.29, as noted in the May 10 communication (bring-

ing the total to $12,302.52 as noted, *supra*), charges made for out-of-date items which were delivered in December, in the amount of $1,079.45, must be subtracted, bringing the balance due on material delivered on or after January 1, 1968, to $11,223.07.

In finding this sum to be the amount due on materials, the Court also finds that the payments made to General Electric by A-All on the account were applied by General Electric to the oldest unpaid portion of the account.

■ The Court finds the notice sent May 10, 1968, to be timely as to all materials delivered on or after January 1, 1968, and in substantial compliance with art. 5160. The notice requirements of art. 5160 are to be liberally construed, and substantial compliance is all that is required, United States Fidelity & Guar. Co. v. Parker Bros. & Co., Inc., 437 S.W. 2d 880 (Tex.Civ.App.—Houston 1969, writ ref'd n. r. e.); United Benefit Fire Ins. Co. v. Metropolitan Plumbing Co., 363 S.W.2d 843 (Tex.Civ.App.—El Paso 1962, no writ).

When the claim of General Electric was not paid, this suit was filed against Epco and its surety for the amount due for materials supplied plus interest and attorney's fees. Citizens National Bank & Trust of Baytown filed a plea of intervention, alleging a security interest under the Uniform Commercial Code and claiming priority pursuant to that security interest over the claim of General Electric as to the money retained by the prime contractor.

As early as July of 1966, intervenor Bank filed with the Secretary of State of Texas a financing statement between itself and A-All Electric Company. Thereafter, on June 14, 1968, A-All executed a note in the principal amount of $10,000 and an accounts receivable security agreement to the Bank in connection with its subcontract with Epco. On June 9, 1969, the Bank obtained judgment on its note against A-All for the total sum of $11,880, which judgment is entitled to a credit of $512.-

50. The judgment debtor, A-All, is insolvent.

### I.

■ Intervenor first urges that the fund held by Epco is not a statutory retainage as defined in art. 5160, but is instead a claim for offsets for damages caused by A-All's delaying completion of the project and that, in fact, the amount held by Epco is greater than the ten percent permitted by statute. For these reasons, intervenor argues, General Electric cannot claim the monies as contract funds retained.

There is no basis in the proof for the allegation that the undistributed fund is held as an offset. Epco does not allege that such money should be so applied. And the fact that over ten percent of the contract price was withheld from A-All does not divest the fund of its character as undistributed earned funds. In fact, testimony shows that such sums were held by Epco because the contractor had reason to believe that A-All was insolvent and there were creditors of A-All as yet unpaid to whom Epco or its surety was potentially liable.

The plaintiff here, General Electric, is not a claimant under any retainage agreement as provided for in art. 5160B(b)(1) and B(c) (although there is a retainage provided for in the contract between Epco and A-All). If Epco had not assumed the role of stakeholder and retained in its possession the undistributed contract monies in satisfaction of the debts of A-All, but had instead paid A-All in full, plaintiff could not assert a right, by contract or otherwise, against Epco for retainages. *Compare* the facts here *with* the facts in Keetch Metal Works v. Yates, 378 S.W.2d 122 (Tex.Civ.App.—Dallas 1964, no writ). Likewise, if Epco had paid the fund directly to the assignee bank, plaintiff's claim against such fund would be defeated.

The Court has not been directed to and has not found by independent re-

search any authority which changes the attributes of the undistributed earned funds held by the contractor simply because such funds exceed that amount which may be claimed pursuant to retainage agreements under art. 5160. Without authority to the contrary, the equitable rights as enumerated in Pearlman v. Reliance Insurance Co., 371 U.S. 132, 141, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), are controlling.

## II.

Case law has long ago established the preferred position of laborers and materialmen in ascertaining priorities as to distribution of retained funds in public works construction, e. g., Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); American Surety Co. v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 56 S.Ct. 9, 80 L. Ed. 105 (1935); Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908). These equitable rights were recognized and protected federally by the Miller Act and in Texas by the provisions of the McGregor Act. National Shawmut Bank v. New Amsterdam Cas. Co., 411 F.2d 843 (1st Cir. 1969); Sheldon v. S & S Aggregates Co., 441 S.W.2d 950, 952–953 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.) and cases cited therein; United Benefit Fire Ins. Co. v. Metropolitan Plumbing Co., 363 S.W.2d 843, 847 (Tex.Civ.App.—El Paso 1962, no writ). Thus, Texas Courts have held that the McGregor Act, art. 5160, was patterned after the Miller Act and was highly remedial in nature, reflecting the intentions of the legislature to provide a simple and direct method of giving notice and perfecting claims of laborers and materialmen.

 Intervenor urges that its claim, perfected in accordance with the provisions of the Uniform Commercial Code, takes priority over claims of the materialmen, especially the plaintiff. It is undisputed that the Bank has complied with all of the provisions of the Uniform Commercial Code and has by security agreement protected its assignment of accounts receivable and contract rights due and owing from Epco to A-All. It is also undisputed that General Electric has no security interest under the Code, as no efforts were made by that party to perfect such interests through the filing of a financial statement or the taking of a security agreement from A-All. This deficiency is not dispositive of the instant case, however, since the Court finds that the Uniform Commercial Code did not change the rights of materialmen to retainage and funds remaining on hand in connection with public works controlled by art. 5160. Thus, the security agreement of the Bank is inferior to any allowed claim of a laborer or materialman.

Section 1.103 of the Code, V.T.C.A., specifically provides that unless displaced by the particular provision of the Code, the principles of law and equity shall supplement its own provisions. National Shawmut Bank v. New Amsterdam Casualty Co., 411 F.2d 843 (1st Cir. 1969) reinforced the strength of the limitation stated in § 1.103 of the Code and held that materialmen's rights as they existed prior to the passage of the Code remained unchanged. *Id.* at 845. That case, although dealing specifically with the subrogation rights of the surety, reiterated the *prior rights* of laborers and materialmen to be paid from retained funds and of the surety to apply such funds to the cost of completion of the contract where the contractor had defaulted, over and above the rights of the assignee Bank to recover the amount of its loan; this, even though the assignee Bank was the only claimant to have perfected a security interest under the Code. *Id.* at 848. *See also* Framingham Trust Co. v. Gould-National Batteries, Inc., 427 F.2d 856 (1st Cir. 1970), where the First Circuit reversed the lower court and held that the surety, which, after the contractor's default completed construction at a cost of $3,000 and paid $50,000 to previously unpaid laborers and materialmen, was entitled to reimbursement by the owner out of funds

earned but undistributed before satisfaction of the claim of assignee Bank which had a perfected security interest.

The Court in *Framingham* speaks of the owner's equitable obligation to the laborers and materialmen which arises from his receiving the benefit of labor and materials from those suppliers. *Id.* at 858. I see no material distinction between that equitable obligation and the one imposed upon and rightly assumed by the contractor here, Epco. The McGregor Act, like the Miller Act, is a vehicle for insuring that the obligation will be fulfilled. The equitable obligation does not find its genesis in the Act, which merely recognizes the "peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money." *Id.* at 858 n. 5, quoting from United States v. Munsey Trust Co., 332 U.S. 234, 240, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947).

The import of these cases and of other surety cases, *see e. g.,* Trinity Universal Insurance Co. v. Bellmead State Bank, 396 S.W.2d 163 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.), which protect and indemnify the surety who bears the cost of completion of a contract and the payment for labor and materials, necessarily infers the basic obligation upon which the indemnity or subrogation is allowed—the payment of laborers and materialmen. Here, the funds are held by the contractors rather than the surety. Whatever the identity of the stakeholder, the first beneficiaries of the retained funds under these authorities are (1) the person for whom the work is to be performed—the owner, and (2) the performers themselves—laborers and materialmen.

In the leading case of Pearlman v. Reliance Insurance Co., 371 U.S. 132, 141, 83 S.Ct. 232, 237, 9 L.Ed.2d 190 (1962) the Court recognizes the established legal principles that:

the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job *and paid his laborers and materialmen,* would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all of these rights to the extent necessary to reimburse it. (emphasis added).

The contract itself, terms of which are incorporated by reference into the subcontract with A-All, states that:

The Contractor shall not assign the whole or any part of its contract or any moneys due or to become due hereunder without written consent of the Owner. In case the Contractor assigns all or any part of any moneys due or to become due under this contract, the instrument of assignment shall contain a clause substantially to the effect that it is agreed that the right of the assignee in and to any money due or to become due to the Contractor shall be subject *to prior claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the work called for in this contract.* (emphasis added)

*See* Defendants' Exhibit 4A at 10, section 31.

The Court finds that the claim of General Electric was fixed prior to the time the assignment to the Bank was made and that it has a prior right on all moneys that remain in the hands of the prime contractor up to a sufficient amount to satisfy its claims as herein set out, plus interest from May 13, 1968. The prime contractor still owes the subcontractor, A-All, the sum of $11,934.80, which is not enough money to satisfy the claim of General Electric.

The Court further finds that according to the provisions of Article 5160, General Electric is entitled to recover judgment of and from the prime contractor and its surety, The Travelers Indemnity Company, jointly and severally,

for its debt in the amount of $11,223.07, plus interest at the rate of six (6%) percent per annum from May 13, 1968. Execution shall first issue against Epco Constructors, Inc., and if the execution is not satisfied, then the judgment, or any deficiency from the prior execution, shall issue against The Travelers Indemnity Company.

## III.

Issue is raised as to the validity of the account security agreement against Epco on the grounds of (1) misnomer, (2) failure to obtain approval of Epco to the assignment, and (3) failure to comply with the general conditions of the prime contract, specifically section 31, quoted *supra*.

■ The first point urged is insubstantial. Although the notice sent referred to Epco as "Epco Contractors, Inc." instead of the proper designation "Epco Constructors, Inc.," the misnomer was hardly confusing, and Epco should have and unquestionably did understand the reference. Moreover, Epco's proper address was used and the notice was, in fact, received. It is evident, then, that Epco had actual notice of A-All's assignment of contract rights to the Bank by receipt of an executed copy of the security agreement.

■ The second ground urged for invalidity is failure to secure the approval required in section 31 of the contract. This argument is precluded by the terms of § 9.318(d), Tex.Bus. & Comm.Code Ann. (1963), which provides:

A term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties is ineffective.

The commentary upon this particular provision elucidates further:

Under the rule as stated an assignment would be effective even if made to an assignee who took with full knowledge that the account debtor had sought to prohibit or restrict assignment of the account or of the money to be earned under the contract.

Comment, par. 4, to § 9.318 of the Tex. Bus. & Comm.Code Ann. (1968).

The third point asserted to show invalidity is failure to agree to the terms of section 31 which require a clause establishing the priority of "prior claims" of laborers and materialmen over claims of the assignee. The Court finds this contention equally as unpersuasive as the previous two. There is no insufficiency shown by a failure to agree to that which is already required by law. And the rule that prior claims of laborers and materialmen take precedence over claims of an assignee money lender is well established, as reflected in the authorities cited *supra*, part II of this opinion.

Thus, the Court finds that a valid assignment was executed, and, to the extent of the retained funds remaining after satisfaction of General Electric's claims, which indeed may be nominal, the assignee should recover.

## IV.

■ Finally, the Court must consider the plaintiff's claim for attorney's fees pursuant to the amended provisions of art. 5160. The question here is whether the provision for attorney's fees applies to cases in which all events took place prior to the date of amendment. Plaintiff cites as authority for allowance of fees the case of Hilton v. Haden Associates, Inc., 458 S.W.2d 854 (Tex.Civ. App.—Fort Worth 1970, no writ), wherein all transactions occurred prior to the amendment date, and fees were awarded.

Article 5160, as amended, provides for suit "for the amount due [for labor or materials] on the balance * * * unpaid at the time of filing the claim or of the institution of the suit plus reasonable attorney's fees * * *." It is evident that the *Hilton* Court construed this language to allow attorney's fees, even if all events relevant to the suit predated the amendment of art. 5160, as

**118**

long as suit was filed *subsequent* to such date:

> We find and hold that the amended provisions of Art. 5160, effective June 2, 1969, are applicable to this suit filed on June 4, 1969, because of the language employed therein.

458 S.W.2d at 860.

The instant case was filed on April 1, 1969, prior to the amendment date. Accordingly, I find the allowance of attorney's fees to be inappropriate in this case.