**CORPUS CHRISTI BANK AND TRUST, Appellant,**

v.

**Chester SMITH et al., Appellees.**

**No. 860.**

Court of Civil Appeals of Texas, Corpus Christi.

June 20, 1974.

Mark W. Owen, Wood, Boykin & Wolter, Corpus Christi, for appellant.

James P. Ryan, Wood, Burney, Nesbitt & Ryan, Kenneth G. Botary, Harold Alberts, Finley L. Edmonds, William R. Anderson, Jr., Sorrell, Anderson & Sorrell, Milton W. Walton, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is an interpleader action which involves the superiority of rights to funds retained by the City of Corpus Christi in connection with a public works contract. In issue are the rights asserted by subcontractors and matérialmen against the rights asserted by the general contractor's assignee bank. The amount of the funds retained was less than the money owed to the bank and was also less than the total claims of the subcontractors and materialmen. Trial was to the court without a jury. The trial court awarded all of the funds to the subcontractors and materialmen, appellees herein. The bank has appealed.

Appellant limits its appeal "to the question of how the trial court should have distributed the funds withheld by the City of Corpus Christi." Two basic issues are presented. Are appellees third party beneficiaries under the contract? Does appellant have an enforceable security interest againt the funds that gives it priority over the claims of appellees?

Manson Industries, Inc., (Manson) was one of the many contractors who came to Corpus Christi in the wake of Hurricane Celia. It began borrowing money from the Corpus Christi Bank & Trust (Bank) in late 1970 in order to finance its numerous construction jobs. Prior to and during the course of advancements made by the Bank to Manson, the Bank negotiated with Manson for the security of all past, present and future advances.

The City of Corpus Christi (City), as owner, entered into a public works contract with Manson, as general contractor, for the repair of the International Airport, at Corpus Christi. The contract was executed on March 3, 1971. The total consideration was $22,250.00. The work was bonded by performance and payment bonds issued by National Surety Corporation. During the course of construction, the City withheld $13,221.10, which was accepted by all parties as the correct amount of the retainage pursuant to the contract. Prior to and following the completion of the work, appellees came forward with unpaid claims for services and materials furnished the work in the total sum of $13,622.53.

Chester Smith filed suit against Manson on his claim and joined the City and the Bank as defendants therein. The City tendered the retained funds into court, and interpled National Surety Corporation, A.B. C. Hardware & Supply Co., Armstrong Lumber Co., Thurman-Fondren Glass Co., Inc., Baker Roofing & Sheet Metal Co., and Heath Floor Co., Inc., all of whom were asserting claims to the funds. The City, with the consent of all parties, was dismissed from the suit before judgment was rendered.

A.B.C. Hardware & Supply Co. was the only subcontractor or materialman that perfected a claim against the payment bond under the provisions of Article 5160, Vernon's Ann.Civ.St. The trial court in addition to matters not connected with this appeal, awarded National Surety Corporation, the Surety, a recovery of the full amount of the claim of A.B.C. Hardware & Supply Co., pro-rated the money then remaining in the registry of the court among Chester Smith, Armstrong Lumber Co., Thurman-Fondren Glass Co., and Heath Floor Co., Inc., appellees herein. National Surety Corporation was dismissed as an appellee to this appeal prior to submission of the case.

Appellees claim that they are third party beneficiaries to the contract. They

base their claim on the "Final Payment" clause of the contract between Manson and the City, which provides, in part:

"Whenever the improvement provided for by the contract shall have been completely performed on the part of the Contractor as evidenced by the Engineer in the Certificate of Final Inspection, a final estimate showing the value of the work will be prepared by the Engineer as soon as the necessary measurements and computations can be made. All prior estimates upon which payments have been made are subject to necessary corrections or revisions in the final payment. The amount of this final estimate, less any sums that have been deducted or retained under the provisions of the contract, will be paid the Contractor within thirty (30) days after final acceptance *provided the Contractor has furnished to the City satisfactory evidence that all sums of money due for any labor, materials, apparatus, fixtures, or machinery furnished for and used in the prosecution of the work have been paid; or that the person or persons to whom the sum may respectively be due have consented to such final payment.* . . ." (Emphasis supplied.)

Appellant contends that the above quoted provision does not reveal any intention to treat or consider laborers, materialmen and subcontractors as third party beneficiaries. They insist that the provision does no more than define "final project payment in such a manner as to give the City the greatest possible protection from claims or liability arising from the performance of the contract."

■ Parties are presumed to contract for themselves, and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears from the language of the contract itself that such was the intention of the contracting parties. Banker v. Breaux, 133 Tex. 183, 128 S.W.2d 23 (Tex.Comm'n App. 1939, opinion adopted); Republic

Nat. Bank v. National Bankers Life Ins. Co., 427 S.W.2d 76 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.); 13 Tex.Jur.2d, Contracts, § 352.

■ Under the rules presently existing in this State, if a contract is entered into for the direct benefit of a third person not a party thereto, such third party may sue to enforce any provision thereof that benefits him directly, even though the primary purpose of the contracting parties was to benefit themselves. Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962); Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823 (1945); Knox v. Ball, 144 Tex. 402, 191 S.W.2d 17 (1946); Ohio Casualty Ins. Co. v. Beckwith, 74 F.2d 75 (5th Cir. 1935).

The intention of the contracting parties in the contract before this Court is expressed in unambiguous language. Inasmuch as the contracting owner is a municipality, and as the contract is for the construction of public improvements, there is and can be no inference that the contracting parties, by the use of the language contained in the "Final Payment" clause, intended that the City benefit by the use of such language in the agreement, or that its purpose was to protect the City against liens or claims asserted by laborers, materialmen and subcontractors who furnished labor, materials and services on the work, but who were not paid therefor. The property of the municipality is not subject to any such lien and the City itself is not liable for such claims; therefore, any argument that the provision was required in order to avoid the perfection of liens against the public improvements is without merit. The clause was not necessary in order to render the general contractor personally liable to those who performed labor or furnished materials on the work because that liability arose as a matter of law from contracts of employment by the contractor with those persons.

The City's Chief Engineer in the Department of Physical Development, in answer to the question as to why the provi-

sion with respect to final payment was inserted in the contract, replied:

" . . . the best of my knowledge, these provisions are put in the contract to protect local subcontractors, suppliers, et cetera."

█ No reason exists why the contracting parties did not intend to benefit laborers, materialmen and subcontractors by the deliberate insertion of the above quoted provision in the contract. It is highly commendable that a municipality secure protection for those who perform labor, render services and furnish materials in and for the construction of its public works. There is a moral obligation on the part of a municipality to do everything reasonably within its power to see that those who furnish labor and materials which enter the work-project are paid before final settlement is made with the general contractor. See Cove Irr. Dist. v. American Surety Co. of New York, 42 F. 2d 957 (9th Cir. 1930), and the many cases cited therein.

The intention of the contracting parties to benefit laborers, materialmen and subcontractors, the class or classes to which appellees belonged, was clearly expressed by the language employed in the contract. In effect, the City, as owner, and Manson, as general contractor, agreed in plain and specific language that final payment would not be made to the contractor following acceptance of the work by the City until the City was satisfied that all laborers, materialmen and subcontractors on the job had been paid, unless they (the claimants) consented to final payment to the contractor of the retained money despite their unpaid claims. The City bargained that Manson would pay all such claims, irrespective of the fact that there was no possibility of a lien being fixed against the property in the event the contractor did not pay them. A careful consideration of the contract from its four corners lends support to the view that the contracting parties contemplated that all claims for labor, services and materials performed and furnished in connection with the project would be paid by Manson, or else the retainage fund would be available for such payment. In that sense, the retainage became a security for payment of all such claims arising from the work.

Benefit to laborers, materialmen and subcontractors was the end and aim of the condition made part of the "Final Payment" provision of the contract. If the provision was not for their direct benefit, it was without purpose, significance or reason. We hold that appellees were third party beneficiaries under the contract, that their interests were direct and not incidental, and as such beneficiaries thereunder had a legal right to sue under the contract and to have the retainage applied towards payment of their claims.

The cases of Citizens Nat. Bank in Abilene v. Texas & Pacific Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941), and Scarborough v. Victoria Bank & Trust Co., 250 S. W.2d 918 (Tex.Civ.App.—San Antonio 1952, writ ref'd), relied on by appellant, each of which held that a contractual provision similar to the one contained in the contract between the City and Manson was made for the protection of the owner and not for the benefit of third party persons, do not control the case at bar. Those cases are distinguishable on the facts from this case. The contracting owner in each of those cases was a private corporation, whereas here, the contracting owner is a municipality. See 2 Williston on Contracts, § 372, pp. 919–920 (3rd Ed.), 1959.

█ It is the position of the Bank, appellant, that it is entitled to the entire fund withheld by the City with the exception of National Surety Corporation's prior right to subrogation for the payment of A.B.C. Hardware & Supply Co.'s claim, which was perfected and paid in accordance with Article 5160, V.A.C.S. Its claim to the funds rests upon its asserted status as a secured creditor of Manson, since it had a perfected security interest in Manson's ac-

counts receivable and an unperfected security interest in Manson's contract rights. It further says that appellees are not persons who take priority over unperfected security interests, and that as they did not perfect their claims and secure their statutory rights under Article 5160, V.A.C.S., that their claims are subject to the security interest, albeit unperfected, of appellant.

On December 30, 1970, a security agreement was made, wherein all past, present and future advances by the Bank were secured by, and a security interest granted in, all of Manson's accounts receivable "now owned or hereafter acquired". A financing statement was filed on December 31, 1970, covering the collateral listed in the aforesaid security agreement: A similar security agreement was executed on January 12, 1971, and was followed up by a financing statement which was filed on January 15, 1971. Security agreements, one dated February 26, 1971, listing as collateral "contracts and accounts receivable now owned or hereafter acquired", and the other dated July 27, 1971, listing as collateral "accounts, contract rights . . .", were executed, but a follow-up financing statement was not filed with respect to either of the last two mentioned security agreements.

■ Subcontractors, laborers and materialmen are in a preferred position in ascertaining priorities as to distribution of retained funds in the construction of public works. Panhandle Bank & Trust Co. v. Graybar Elec. Co., Inc., 492 S.W.2d 76, 81 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.); General Electric Supply Co. v. Epco Constructors, Inc., 332 F.Supp. 112 (S.D.Tex.1971).

■ Where the contract price for public improvements is in excess of $2,000.00, the unpaid laborers, materialmen and subcontractors do not have and cannot perfect a lien against the retained funds in the hands of the contracting governmental authority simply because they were not paid for the labor, materials and services which they furnished the project. This Court, in Barfield v. Henderson, 471 S.W.2d 633 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.), held that the public works contract there involved did not give the subcontractors and materialmen a paramount interest in the retained funds to satisfy their unpaid claims as against a bank which had financed the general contractor in the course of the work and had been duly assigned the accounts receivable and contract rights by the contractor as security.

Appellant cites *Barfield* as authority for its contention in this case that it, the assignee bank, was entitled to priority over appellees in the distribution of the retained funds. Appellees say that the case has no application to the case at bar. We agree with appellees.

*Barfield* cannot be made to apply to this case. There, the subcontractors and materialmen sued the governmental authority (and others) to impress an alleged equitable lien on the retained funds solely on the ground that they had furnished materials and services to the work. They were not named as third party beneficiaries in the contract, and the contract itself did not contain any language that evidenced any intention whatever to directly benefit the materialmen and subcontractors who furnished materials and services in connection with the construction of the public improvements. Here, the appellees were third party beneficiaries under the public works contract; they sued in that capacity to enforce a pertinent provision of the contract, not to establish or foreclose an equitable lien on the funds just because they had not been paid for the services and materials furnished by them.

■ Under existing law, it is possible for the assignee bank of a general contractor to have a valid assignment of all moneys due the contractor thereunder and of all contract rights created thereby. But, it does not follow that the contracting owner should or must pay a defaulting contractor's assignee any money to which the con-

tractor himself was not entitled and could not recover from the owner. Under the record before us, since Manson, the general contractor, defaulted on the contract in that he did not pay appellees for their services and materials furnished in repairing the airport, it (Manson) never became entitled to any part of the retainage since the total claims asserted by appellees exceeded the total of the retained funds. Appellant, the assignee of Manson, simply stepped into the shoes of Manson and had no greater right to the retainage than did Manson. O'Neil Engineering Co. v. First National Bank, 222 S.W. 1091 (Tex. Comm'n App. 1920, opinion approved); City of Dallas v. Conley, Lott, Nichols Machinery Co., 172 S.W.2d 989 (Tex.Civ. App.—Dallas 1943, writ ref'd); Deer Park Bank v. Aetna Ins. Co., 493 S.W.2d 305 (Tex.Civ.App.—Beaumont 1973, n. w. h); Travelers Indemnity Co. v. Snyder National Bank, 361 S.W.2d 926 (Tex.Civ.App.—Eastland 1962, n. w. h.); Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); General Electric Supply Co. v. Epco Constructors, Inc., supra; Avco Delta Corporation Canada Ltd. v. United States, 484 F.2d 692 (7th Cir. 1973).

■ While it is true that an account receivable having a potential existence may be the subject of a valid assignment, still such assignment is ineffectual with respect to the enforcement of any right thereunder until such potential account receivable becomes in fact an actual account receivable. See Kaker v. Giles, 269 S.W. 151 (Tex. Civ.App.—Fort Worth 1924, writ dism'd); Alfalfa Lumber Co. v. City of Brady, 149 S.W. 204 (Tex.Civ.App.—Austin 1912, n. w. h.). Here, the retained funds never became in fact an actual account receivable to which the contractor was entitled because when Manson failed to pay its subcontractors and materialmen, no money was due it to the extent of such unpaid claims. Appellant has no greater rights than Manson, its predecessor in interest had, and its claim to the funds must be

judged on that basis, that is, as if Manson itself was the appellant.

We hold that the rights of appellees to the retained funds are superior to those of appellant. The trial court correctly decreed a distribution of all the retained funds to appellees to the exclusion of appellant. We have carefully considered all of appellant's points of error and they are all overruled.

The judgment of the trial court is affirmed.