THE FIRST NATIONAL BANK IN BIG SPRING, Appellant,

v.

Gib CONNER, Appellee.

No. 6805.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 12, 1959.

Rehearing Denied Feb. 9, 1959.

Walton S. Morrison, Big Spring, Carrol C. Smith, Big Spring, of counsel, for appellant.

Simpson, Clayton & Fullingim, Amarillo, for appellee.

CHAPMAN, Justice.

This opinion is in lieu of an opinion announced herein on November 24, 1958.

Appellant in this case, The First National Bank in Big Spring, was intervenor in the court below in a suit filed by Jack York, a used car dealer of Big Spring against Gib Conner, a used car dealer of Amarillo.

Conner and York had on many occasions bought and sold automobiles to each other. When York sold to Conner, their method of doing business was for Conner to give a check or a draft on his banking institution in Amarillo, which York would deposit in his bank for clearance, with title to the automobile attached. When Conner's check or draft would reach Amarillo through the regular clearance channels he would examine the title and if he found it satisfactory would authorize his bank to pay it.

In March, 1956, Conner went to Big Spring to buy some automobiles. The testimony in effect shows the agreement between the two was that York would purchase selected used cars, previously approved by Conner, from various dealers, and Conner would then buy the cars from York at an agreed profit to the latter on each transaction. The automobiles involved in this suit are a 1955 Chevrolet, a 1954 Ford, a 1955 Plymouth and a 1955 Mercury.

York paid for each of the automobiles named by giving drafts drawn by him on the Intervenor Bank and attaching to each draft the certificate of title to the machine purchased by that particular draft, the four drafts aggregating $5,475. Appellant bank paid the four drafts drawn by York, but retained all certificates of title, evidences of either ownership or liens. All four of the certificates of title were signed in blank, with no name of the purchaser filled in, and each released to York along with each automobile the particular title represented.

The four cars were then driven or transported to Amarillo, where Conner took possession of them, paid the transport driver, and sent to York four drafts drawn by him on the First National Bank of Amarillo covering the purchase prices previously agreed upon for each car. York endorsed each draft, deposited all four of them with the First National Bank of Big Spring and took up the drafts he had given for the machines. Appellant bank then took each certificate of title from the York drafts, attached them to the Conner drafts and sent them through the regular banking channels to the Amarillo Bank they were drawn on for payment. Conner after receiving all

of the four cars and without even examining the titles thereto authorized his bank not to pay the drafts and to send them back. They were sent through the second time and again turned down. York then filed suit for title and possession of the automobiles, alleging they were procured by a fraudulent scheme on the part of Conner to coerce him to pay appellee a disputed claim arising out of a previous transaction between them. As shown by his testimony hereinafter quoted, Conner admitted his purpose in turning down the drafts and holding the automobiles was to force a settlement by York on a previous transaction between them. Appellant in its pleas of intervention alleged it advanced $5,475 for the purchase prices of the automobiles by honoring and paying the drafts drawn by York; that Conner obtained possession of the machines by artifice and fraudulent design; that at the time he took possession he had no right, title or interest in them and does not now have any right, title or interest in them; that Conner has never paid any part of the purchase price of the machines and has refused to accept and pay the drafts drawn by him on the First National Bank in pursuance of a purchase agreement between Conner and York; and that by reason of paying the purchase price and by virtue of holding the certificates of title it is the owner of all right, title and interest in the machines and is entitled to immediate possession. In the alternative it pleaded that it holds an equitable purchase money lien on the automobiles to secure its purchase money advances and is entitled in equity to the establishment of its lien and foreclosure of same.

The case was tried to a jury but after all testimony was completed the trial court submitted only the question having to do with a previous transaction between York and Conner and in which appellant was not in any manner involved, refused a requested issue as to the agreement and understanding between York and Conner that title and ownership did not pass to the automobile unless the drafts were paid, denied Intervenor any relief sought against Conner, found title and ownership to all the machines to be in Conner, ordered appellant bank to deliver the certificates of title to appellee and further ordered, "that, if necessary, the State Highway Department of the State of Texas issue to Conner certificates of title for each and all of the above described motor vehicles," even though the State Highway Department was not a party to the suit.

Appellant's points of error are based on the assertions that the trial court erred in refusing to enter judgment establishing its equitable lien against the four automobiles and in holding that title and ownership in each of them was in Conner. Though judgment was rendered for Intervenor Bank against York he did not perfect his appeal.

Conner testified his purpose in turning down the drafts and holding the automobiles was an attempt to collect a claim arising out of a prior transaction in which he had purchased a Cadillac from York for $3,700, sold it through the Amarillo auction and had to refund the money because it was a stolen automobile.

"Q. And you thought that by turning down these drafts and holding the cars you could force Jack to settle with you? A. Yes, sir.

"Q. And that was your purpose in holding them? A. Yes, sir."

Appellee Conner also testified:

"Q. You knew as a matter of fact, did you not, that until you paid for the title of those cars, that they belong to Jack, didn't you. A. Well, yes.

"Q. Wasn't that your testimony, that you gave in that deposition? A. Yes, sir.

"Q. Was that testimony true when you gave it under oath as appearing on page 22 down through the marked part? A. Yes, sir.

"Q. And it is true now isn't it? A. Yes, sir.

"Q. Didn't you further testify to the same effect on your testimony on the plea of privilege hearing?

"Q. You knew at the time you bought these cars that you didn't and wouldn't own these automobiles until you had paid for them didn't you? A. Yes, sir.

"Q. You knew that as long as the titles were not conveyed to you by those drafts that they were Jack's cars, didn't you? A. Yes, sir.

"Q. Isn't that the testimony you gave on that hearing? A. Yes, sir.

"Q. Have you paid for the cars? A. No, sir.

"Q. But was it your testimony a moment ago that it was your understanding that until you had paid York for the cars, that you did not have title to them. A. Yes, sir."

█ It is without contradiction in the record that when Intervenor Bank paid the drafts of York for the four automobiles in question the latter did not have a sufficient balance to pay the $5,475 and the record reflects that the bank was careful to keep possession of the certificates of title as security for the money it was paying out in drafts. We believe the trial court was without authority to order the certificates of title held by Intervenor Bank turned over to appellee. Our Supreme Court, speaking through Mr. Justice Griffin in, Texas Automotive Dealers Ass'n, Inc. v. Harris County Tax Assessor-Collector, 149 Tex. 122, 229 S.W.2d 787, 790, has held that "* * * the proper evidence of title for a dealer with dealer's license may be a certificate of title or license not in his name, except by endorsement." York was a dealer within the purview of our Certificate of Title Act, Art. 1436–1, Sec. 19, Vernon's Ann.Penal Code. He having paid for the machines with money furnished by Intervenor Bank, taken the certificates of title by endorsement and turned them over to the bank, which it took and held as a means of security for the monies advanced to York for payments of the purchase prices of the machines, we believe this procedure put title in York to the four automobiles, with liens in favor of Intervenor Bank.

█ The Dallas Court of Civil Appeals has said, "After a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, is in equity a lien. * * * It is not necessary that a lien is created by express contract or by operation of the statute; courts of equity will apply the relations of the parties and the circumstances of their dealings in establishing a lien based on right and justice. 37 C.J. 307, 308." Williams v. Greer, Tex.Civ. App., 122 S.W.2d 247, 248.

█ Appellee, by brief, asserts any lien cannot be claimed by the bank because it would have to have been asserted against York at a time when he owned neither the title nor the possession. To this assertion we cannot agree. The purported sales from York to Conner were never consummated. The evidence is without contradiction that the agreement was for a cash consideration, as distinguished from a credit transaction, and that Conner has not to this day complied with such agreement by the payment of any cash. Hence, the title never passed out of York to Conner. All Conner has ever had is possession. This court has held that, "Mere possession of property does not warrant an assumption of legal ownership." Deahl v. Thomas, Tex.Civ.App., 224 S.W.2d 293, at page 296, syl. 4–6. In Gregory v. Laird, Tex.Civ.App., 212 S.W.2d 193 at page 195, in a case where the sale of an automobile was conditioned upon the payment of the draft for its purchase price, the Galveston Court of Civil Appeals said, "the sale of said automobile to Stratton was conditioned on the payment of the draft for its purchase price and since the

purchase price therefor was not paid by Stratton, the title to said automobile did not .pass out of appellee * * *." An interpretation of the evidence in this case can lead only to the conclusion that it was contemplated by the parties to the transactions here involved that the sales depended upon the payment of the drafts. As shown by the above quoted testimony, Conner himself admitted that York still owned the machines until the titles to them were paid for and that until the titles were conveyed to him they were still York's cars.

Accordingly, we hold that appellee has no right title or interest in the four automobiles, that titles to them are still in York, and that appellant has a lien for the amount of money advanced on them and is entitled to foreclose said lien. Judgment of the trial court is reversed and rendered in accordance with this opinion.