Robert L. BUCK et ux., Appellants,

v.

Joseph J. JOHNSON, Appellee.

No. 5226.

Court of Civil Appeals of Texas,
Waco.

May 10, 1973.

Percy Foreman, Tom F. Coleman, III, Levert J. Able, Houston, for appellants.

Butler, Binion, Rice, Cook & Knapp, Tom Alexander, Lance C. Winchester, Houston, for appellee.

Sheinfeld, Maley & Kay, Myron M. Sheinfeld, Houston, for receiver.

## OPINION

JAMES, Justice.

This is an appeal from an order appointing a receiver, and from an order overruling a motion to vacate the receivership.

Appellee Joseph J. Johnson originally filed this suit on July 14, 1972, against Appellants Robert L. Buck and wife Bunny Jayne Buck, alleging that in 1969 and 1970 he, Johnson, purchased the Bucks' interest in a real estate development known as "Memorial City" in Harris County, Texas, for a total consideration of $1,750,000.00 and the assumption by Johnson of all mortgages and liens outstanding at that time in the amount of about $14,000,000.00; that the parties executed a great number of legal documents in connection with this major transaction; that based on this set of written agreements, the Bucks owe Johnson three items totalling $11,681.73 which the Bucks have not paid; moreover, that as part of the series of agreements, the Bucks agreed to execute certain unspecified partial releases and subordination of lien instruments upon the payments of certain amounts of money; that the Bucks capriciously and wrongfully refused to execute such instruments, thereby causing Johnson to incur damages that would have been unnecessary had the Bucks performed as per their agreements. Said Plaintiff's Original Petition of Johnson prayed for judgment for the items of $11,681.73, to-

gether with interest, attorneys' fees, and damages for the failure of the Bucks to execute the releases and subordination of lien instruments above referred to.

On July 18, 1972, the Bucks filed their Defendants' Original Answer, setting up a general denial, and alleging that since May 1, 1959, a partnership had existed between Buck and Johnson; that Johnson had been developing the partnership properties for residential, apartment and townhouse projects, and commercial centers individually and through a number of different corporate names; that Johnson had been guilty of fraud, misrepresentations and concealments toward Buck and had failed and refused to make any partnership accounting to Buck, and had failed and refused to allow Buck to inspect and examine the partnership books and records. Said Original Answer also alleged detailed factual matters concerning several specific pieces of alleged partnership property not necessary to enumerate here.

The Bucks followed up their Original Answer with a Cross-Action, filed August 7, 1972, suing as Cross-Defendants not only Johnson, but also SSRD, Inc., SSRC, Inc., and Memorial City General Hospital, Inc.; and in addition thereto they sued as Third-Party Cross-Defendants, Louisville Title Company and one Roy H. Bray individually and as Trustee, and the following-named lending institutions: Gibraltar Savings Association, American Bank & Trust Company, Bank of the Southwest, Central National Bank, Continental Bank, Houston National Bank, Main Bank of Houston, Memorial Bank, Pinemont Bank, Center Savings Association, Pasadena Savings Association, San Jacinto Savings Association, and University Savings and Loan Association.

The Cross-Action alleges in effect that in 1958 and 1959 Johnson promoted Buck into going into partnership with him in real estate development; that all told between 1959 and 1962 Buck put about $230,000.00 into their partnership venture; that after Buck had put up initially $100,000.00 into the partnership, they purchased first an 85 acre tract of land and developed it into the Memorial Hollow Subdivisions and thereafter from time to time acquired additional tracts of land which were variously developed into several other subdivisions of other names, not necessary to specify here; that some tracts were purchased in the names of both Buck and Johnson, and some were purchased only in Johnson's name, but all were partnership properties; that through the years in the conduct of purchasing, developing, financing and selling the partnership properties, the assets of the partnership increased although for the most part the properties were substantially involved with liens and mortgages variously held by the banks and savings and loan associations named herein as Third-Party Cross-Defendants; that beginning in 1968 Mr. Buck's health failed and thereafter it became necessary for Johnson to conduct the partnership business affairs; that thereafter Johnson was guilty of fraudulent misrepresentations and concealments of a material nature toward Buck, alleged with detail and particularity, to the effect that the partnership properties were in a bad financial position. Buck further alleged that Johnson grossly misrepresented to him the value of the partnership equity in the properties, to the end that on or about January 31, 1969, the partnership was dissolved, whereupon the Bucks conveyed their undivided one-half interest in the partnership properties to Johnson, for a total consideration of $1,750,000.00, payable partly in cash and partly by a note; that Johnson had never made any final accounting to Buck but had on the other hand secreted the partnership books and records so that Buck has never had an opportunity to inspect them, and has failed and refused to allow Buck to examine them.

Buck further alleged that the fifteen Third-Party Cross-Defendants, that is, the Louisville Title Company and the lending institutions hereinabove-named, have funds

on deposit in the name of Johnson, SSRD, Inc., SSRC, Inc., and Memorial City General Hospital, Inc., and other trade names, all of which funds are under Johnson's control and which are partnership assets, and that "such funds should not be disbursed without the written consent of Robert L. Buck as a co-owner thereof."

Buck's Cross-Action seeks alternative remedies, including a partnership accounting and a rescission of all the deeds, contracts, options and agreements dated on or about January 31, 1969, which the Bucks executed to Johnson, accompanied by an offer to return whatever consideration Johnson had paid for said instruments. Buck further prayed for a declaratory judgment adjudicating the partnership nature or status of at least fifty-six categories of real and personal property alleged to have a gross value of $65,922,490.26 subject to liabilities of $31,476,739.35 or having a net worth of $34,445,750.91. Buck further alleged that the overall agreement of January 31, 1969 was based upon a financial statement made by Johnson wherein he represented Buck's partnership equity to be worth $1,500,000.00 when at the time Buck's equity was in truth and in fact worth $14,282,329.48, and based upon said alleged facts, Buck prayed for a judgment for money damages against Johnson for $12,782,329.48; and in addition thereto, for exemplary damages.

In the prayer of the Cross-Action, Buck prayed among other things: *"why a Receiver to take charge of said properties and business should not be appointed,"* as well as for a Master in Chancery and for an Auditor. (emphasis supplied).

It is recited by the trial court in his Order Appointing Receiver entered August 24, 1972, that on August 7, 1972, Buck caused to be filed with the County Clerk of Harris County, Texas, a Notice of Lis Pendens concerning the instant litigation, in which notice are itemized and described most if not all of the pieces of real estate involved in this lawsuit, all of which were alleged by Buck to be partnership properties of himself and Johnson.

It was after the filing of this Lis Pendens that Johnson (joined by SSRD, Inc., SSRC, Inc., and Memorial City General Hospital, Inc.,) on August 15, 1972 filed a Motion for the Appointment of a Receiver under the provisions of Article 2293, subsection 1 (1960), alleging "because at this time title to certain real estate and funds connected thereto is being contested, and if a receiver is not appointed such real estate and funds will be materially injured or lost."

On August 22, 1972, a hearing was held for the appointment of a receiver during the pendency of this suit. This hearing was attended by attorneys representing the Bucks and Johnson, as well as the title company and most of the banks and savings and loan associations. During this hearing no objections were made as to the propriety of appointing a receiver. All parties who expressed themselves, including the Bucks, agreed that a receiver was necessary. Some of the Third-Party Cross-Defendants did not take a position either way.

It should be borne in mind that the Bucks in their Cross-Action prayed for the appointment of a receiver, and throughout the hearing which began August 22, 1972, concerning whether a receiver should be appointed, suffice it to say that the Bucks' attorneys unequivocally expressed themselves to the trial court in favor of the appointment of a receiver, and affirmatively encouraged the trial court to appoint a receiver.

On August 24, 1972, the trial court entered its Order Appointing a Receiver. Robert S. Webb III, an attorney at law, was appointed as Receiver to take charge of all the properties in controversy. His powers and duties for conduct of the various properties and businesses were outlined in a carefully-worded order. The order further provided that the Third-Party Cross-Defendants (i. e., the title company,

banks, and savings and loan associations) had the right to have their attorneys' fees charged as costs at the rate of $40.00 per hour. The receiver's fees and expenses would be payable monthly upon the filing of his monthly report to the Court and approval thereof with the statement for his services and expenses. The order then provided: "The Court will rule for costs from time to time during the pendency of this suit so that there will be adequate court costs deposited to protect the fee of the receiver and the fees of the lending institutions referred to above, regardless of the outcome of the case." The order further provided that after trial on the merits, in the final judgment all costs were to be adjudged against the losing party.

No appeal was perfected by the Appellants (the Bucks) during the twenty days following August 24, 1972, the date of entry of the Order Appointing Receiver.

On September 26, 1972, the Receiver filed his first monthly report showing his activities and his fees and expenses for the first month's operations (August 22, 1972 through September 24, 1972) showing total fees and expenses for the month to be $10,525.00. On October 11, 1972, an order was entered by the court approving the Receiver's report, and provided that such fees and expenses would be paid immediately from the funds which the Receiver was administering, with the further provision that within twenty days after each monthly statement is approved, that Buck and Johnson would each pay into the receivership to reimburse the corpus one-half of such fees and expenses. Buck's and Johnson's half of the first month's expenses respectively amounted to $5262.50 each. If Buck or Johnson should fail to pay up within the twenty day period, the order provided that "the affirmative relief sought by the noncomplying parties or party shall be dismissed."

The Court in this order of October 11, 1972, recited, "Based upon current Harris County docket conditions, it is anticipated by the Court that this suit will be on file longer than two years and that the Receiver's fees and expenses will amount to a sum in excess of $10,000.00 per month during that time."

In addition to ordering Buck and Johnson to each pay half of the Receivership fees and expenses monthly, the trial court further ordered them to each file an "open end" cost bond as security for costs. Buck and Johnson each filed an open end cost bond as ordered, each of which bonds was duly approved by the court.

Buck, however, refused to pay his half of the Receiver's fees and expenses as ordered by the trial court, not only after the Receiver's first monthly report, but also after the subsequent monthly reports. (The Receiver's second monthly report showed total fees and expenses of $15,352.-15, Buck's half being $7676.08).

On October 16, 1972, Appellants Bucks filed their Motion to Vacate the Receivership, which is now before this court on appeal, asserting several fundamental errors concerning the appointment and continuation of the Receivership, some of which will be discussed hereafter in this opinion by way of disposition of Appellants' points of error. The trial court, by its order dated October 27, 1972, overruled the motion to vacate the receivership, stating "there has been no change of a material nature affecting the circumstances which required the appointment of the receiver ----."

Appellants, the Bucks, appeal upon twelve points of error, attacking (1.) the order appointing the receiver, and (2.) the order overruling their motion to vacate the receivership. We will group some of these points for convenience of discussion, and will take some of them up in a different sequence than that used by Appellants in their brief.

By their first point, Appellants assert, "The order appointing the Receiver dated August 24, 1972 is void or in the alternative voidable by reason of having been en-

tered in direct violation of Article 2318, Vernon's Ann.T.S." We overrule this point.

The pertinent provisions of Article 2318, Vernon's Annotated Texas Civil Statutes read: "No receiver of a joint stock or incorporated company, co-partnership or private person shall ever be appointed on the petition of such joint stock or incorporated company, partnership or person. . . . Nothing herein shall prevent a member of any co-partnership from having a receiver appointed whenever a cause of action arises between the co-partners."

It is true that Johnson together with his puppet corporations filed a motion praying for the appointment of a receiver over their own properties; however, Buck also prayed for the appointment of a receiver even before Johnson did. And at the hearing, both Buck and Johnson let the trial court know in no uncertain terms that they both favored the appointment of a receiver. However, be that as it may, we are compelled to overrule Appellants' first point because Appellants failed to timely perfect their appeal from the order appointing the receiver. This order was entered August 24, 1972, and Appellants did not perfect their appeal until after the trial court's order overruling the motion to vacate the receivership entered October 27, 1972.

Article 2250, V.A.T.C.S., permits an appeal from an interlocutory order of the court (1.) appointing a receiver and (2.) overruling a motion to vacate an order appointing a receiver. However, Rule 385, Vernon's Rules of Civil Procedure, provides that appeals from interlocutory orders, when allowed by law, may be taken by (1.) filing an appeal or supersedeas bond within twenty days after rendition of the order appealed from, and (2.) filing the record in the appellate court within twenty days after rendition of the order appealed from, (with a provision for reasonable extension of time which may be given by the appellate court upon timely filing of such a motion within the twenty day period, or within five days thereafter).

■ Appellants did not perfect their appeal from the order appointing the receiver in compliance with Rule 385, by timely filing their appeal bond and timely filing their record in the appellate court within the time prescribed. Their failure to do so is fatal to their appeal from the order appointing the receiver. These requirements of Rule 385 are mandatory and jurisdictional. Walker v. Cleere (1943) 141 Tex. 550, 174 S.W.2d 956; The State of Texas v. Gibson's Distributing Company (Tex. Sup.Ct.1968) 436 S.W.2d 122. Also see Whitaker Oil Co. v. Ward (Tyler CA 1965) 396 S.W.2d 158, motion to certify overruled 398 S.W.2d 155, no writ history.

When a trial court decides to appoint a receiver in a given case, the question to be decided from which the complaining party is allowed to appeal is whether the property in litigation should be taken into the custody of the court and administered by a receiver. In other words, the question is as to the propriety of having a receivership. In the case at bar, this order was entered August 24, 1972, and the time for appeal started running on this date. Benningfield v. Benningfield (Austin CA 1941) 155 S.W.2d 827, no writ history. The purpose of Rule 385 is to grant speedy relief to a person whose property is wrongfully taken from his possession by the summary process of a receivership, but this relief is conditioned upon the prompt exercise by the Appellant of his right of appeal in order that the right of the Appellee to a receivership may not be suspended longer than is necessary to have an adjudication of such right by the appellate court. McFarlane v. Greenameyer (Galveston CA 1917) 199 S.W. 304, no writ history. Also see Cocke v. Naumann (Dallas CA 1945) 188 S.W.2d 781, writ refused for want of merit.

■ In the case at bar, let us assume for the purpose of argument that the order

appointing the receiver is in violation of Article 2318, because it was made on the motion of Johnson over his own property. Even so, the order appointing the receiver is not void, but would be merely voidable upon a timely direct attack. Spence v. State National Bank of El Paso (Comm. App.1928) 5 S.W.2d 754, opinion adopted by the Suprme Court. Also see 49 Tex. Jur.2d, "Receivers", par. 67, pp. 93 and 94. Appellants' first point is accordingly overruled.

Appellants' fifth, sixth, and seventh points, however, do raise matters contained in the order appointing receiver which we deem void and an abuse of the trial court's discretion, and which will necessitate a reformation of said order. These points (five, six, and seven) were first raised by Appellants in their Motion to Vacate the Receivership.

By point five, Appellants assert the order appointing the Receiver is void insofar as same taxes as costs in this cause at the rate of forty dollars per hour all attorneys' fees incurred by any of the Third-Party Cross-Defendants, that is, by the title company, the banks, savings and loan associations, and lending institutions made parties to this suit by reason of the Bucks' Cross-Action. We sustain this contention.

 It is settled law in this state that, unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract. Counsel fees incurred in prosecuting a suit for or defending against a wrong are not ordinarily recoverable as actual damages. William Cameron and Company v. American Surety Company of New York (Comm.App.1932) 55 S.W.(2d) 1032, opinion adopted by the Supreme Court. Also see New Amsterdam Casualty Company v. Texas Industries, Inc. (Tex.Sup.Ct.1967) 414 S.W.2d 914. In the case at bar there is no basis in law which would permit the taxing of attorneys' fees of any of the Third-Party Cross-Defendants as costs. Therefore, in our view that portion of the order appointing the Receiver purporting to tax such attorneys' fees as costs is void and should be deleted therefrom; and accordingly, the order appointing the Receiver is hereby reformed by the deletion of such provisions.

Appellants' point six asserts that the Order Appointing the Receiver is void insofar as it requires Buck and Johnson to pay monthly the fees and expenses of the Receiver and to reimburse the corpus of the receivership for the Receiver's fees and expenses. We sustain this contention. As stated above, the first month's such expenses amounted to $10,525.00 and the second month's such expenses amounted to $15,352.15, and the trial court anticipated that this cause (and receivership) would be required to pend two years before a trial could be had on the merits, in the light of the Harris County court docket situation.

A review of the pertinent Rules of Civil Procedure is necessary for a determination of Appellants' sixth point, that is, the required deposit for costs question.

Rule 143 provides: "A party seeking affirmative relief may be ruled to give security for costs at any time before final judgment, upon motion of any party, or any officer of the court interested in the costs accruing in such suit, or by the court upon its own motion. If such rule be entered against any party and he fail to comply therewith on or before twenty (20) days after notice that such rule has been entered, the claim for affirmative relief of such party shall be dismissed."

Rule 143 has been interpreted to mean that the party required to give security for costs is required to furnish an "open end" cost bond conditioned that the principal and his sureties will pay all costs as may be adjudged against the principal in trial of the case. Mosher v. Tunnell (Houston 1st CA 1966) 400 S.W.2d 402, error refused NRE. In the case at bar, Buck and Johnson each were ordered by the trial

court to furnish and file such an open end cost bond, and each party did furnish and file such a bond, each bond being approved by the trial court.

Rule 146 provides: "In lieu of a bond for costs, *the party required to give the same may deposit* with the clerk of court or the justice of the peace such sum as the court or justice from time to time may designate as sufficient to pay the accrued costs." (emphasis supplied). The language of Rule 146 has been reiterated in *Mosher,* cited above. Then Rule 148 provides: "No further security shall be required if the costs are secured by the provisions of an attachment or other bond filed by the party required to give security for costs."

■■ Taking these three Rules together in context, and as applied to the case at bar, they mean this: When a party is ruled for costs, he is required to timely furnish and file an open end cost bond; however, the party *may, at his option,* in lieu of a cost bond file with the clerk such sums as the court may from time to time require to cover accrued costs. In other words, *the option lies with the party ruled for costs, and not with the court,* as to whether a cost bond shall be furnished or a deposit in lieu of bond. In the case at bar, neither Buck nor Johnson were given this choice, but the trial court made the choice and ordered Buck and Johnson each to file a bond and in addition thereto, to make monthly deposits. Such action constituted an abuse of discretion, and violated Rule 148; because when Buck and Johnson each timely filed their respective cost bonds, approved by the court (which they each did), they had each done all that was required of them insofar as giving security for costs is concerned.

For these reasons, we hold that portion of the order appointing the Receiver to be void insofar as it requires Buck and Johnson to each pay monthly deposits as security for costs, in the absence of an expressed desire on the part of either of such parties

to pay deposits for costs in lieu of a cost bond, in accordance with Rule 146. Said portion of the order appointing the Receiver, as well as the subsequent orders of the trial court herein to this effect are hereby deleted.

■ Appellants' point seven complains that the order appointing the Receiver is void insofar as it seeks to enforce its provisions (of monthly deposits for costs) by dismissal of the affirmative relief sought by any non-complying parties. In other words, the trial court's order provided that if either party (Buck or Johnson) failed to make his monthly deposit for costs within twenty days from the order approving any given monthly report, that such non-complying party's affirmative relief would be dismissed. We sustain this contention. Under Rule 143, the trial court is given the power to dismiss a party's claim for affirmative relief for his failure to file a proper open end cost bond. However, since Buck had filed this cost bond, the trial court had no authority to require him to make monthly deposits on the costs; and therefore the court's order to the effect that Buck's claims for affirmative relief would be dismissed upon his failure to make monthly deposits violated Rules 146 and 148, T.R.C.P., and was void. For these reasons, that portion of the order appointing the receiver, together with similar provisions of the subsequent orders of the trial court to this effect are hereby reformed by the deletion of such provisions from such orders.

Appellants' points two, three, and four are directed at the trial court's order overruling Appellants' motion to vacate the receivership on the asserted grounds the uncontroverted evidence shows: (2.) there was no necessity for the appointment of a receiver; (3.) any necessity which may have previously existed for the appointment of a receiver had passed, and no present necessity for the Receiver was shown; and (4.) the receivership assets at the time of hearing were in no danger of

being materially injured or lost. We overrule these points.

■ It is true that the Court of Civil Appeals has jurisdiction of an appeal from an order overruling a motion to vacate a receivership, under the provisions of Article 2250, V.A.T.C.S. Rips v. Ungerman (Fort Worth CA 1940) 137 S.W.2d 87, error dismissed; Salas v. Gonzales (San Antonio CA 1944) 181 S.W.2d 821, no writ history.

Our Supreme Court in Lauraine v. Ashe (Tex.Sup.Ct.1917) 109 Tex. 69, 191 S.W. 563 at page 565 has this to say:

"It is furthermore essentially true that when a court of equity in a cause of which it has jurisdiction takes possession of property through a receiver, the property is withdrawn from the jurisdiction of all other courts; and so long as its jurisdiction of the cause subsists, the court has the power, whether rightfully or wrongfully exercised, to continue the receivership. The power of the court to appoint the receiver proceeds from its jurisdiction of the cause and is an element of it. Jurisdiction of the property lawfully acquired may be maintained and exerted as a means of aiding and completing the exercise of its jurisdiction over the cause and giving effect to its judgment upon the rights involved. While the jurisdiction of the cause continues, therefore, the power of the court in respect to the receivership alike continues. Whether the receivership should be continued is to be governed by the necessities of the case as related to the rights of the parties. But so long as the court maintains its jurisdiction of the cause, that is a question of judicial discretion; it is not one of judicial power."

■ In the case at bar, the compelling circumstances given by the trial court as reason for instituting this receivership were caused by Buck's filing of a lis pendens notice with the County Clerk of Harris County, in which he listed all or practically all the properties in controversy.

The very nature of the alleged partnership business which was carried on by Johnson at the time of hearing on receivership appointment (and later assumed by the receiver) required a climate in which real estate could be purchased, improved, financed, and sold, and in which money could be received, deposited, and disbursed. The filing of the lis pendens notice created a climate in which the alleged partnership business could not function, since it caused general restlessness on the part of creditors and lending institutions, both secured and unsecured, thereby making it extremely difficult for all aspects of the business operations to be carried on. Such a stagnation of the business might well cause secured notes to become in default and necessitate foreclosures of liens, many of which were outstanding against the properties in controversy. Banks holding deposits of alleged partnership funds were reluctant to permit checks to be honored against these accounts, as had been done previous to the lis pendens notice. The evidence presented at the hearing on the Motion to Vacate the Receivership showed no change in conditions since the order appointing the Receiver was entered. That is to say, the same necessities for a receivership existed at this latter hearing as existed at the time the Receiver was appointed. Under the record we cannot say the trial court abused his discretion in overruling the motion to vacate the receivership, and we accordingly overrule Appellants' points two, three, and four.

■ Appellants by filing their motion to vacate the order of appointment of the receiver waived all questions incident to the regularity of the appointing order. See Whitaker Oil Company v. Ward (Tyler CA 1965) 396 S.W.2d 158, motion to certify overruled 398 S.W.2d 155, no writ history, and the cases cited in syllabus 3 on page 161.

■ *Whitaker* further holds that the basis for a motion to vacate a receivership must be (1.) presenting to the trial court a

fact, previously unknown to the trial court relating to the propriety of entering an order appointing a receiver, or (2.) calling the attention of the trial court to some fundamental error that renders the order void. Otherwise, a motion to vacate amounts to nothing more than a motion for rehearing before the trial court, which is not the purpose of a motion to vacate an order appointing a receiver as provided for under Article 2250, V.A.T.C.S.

We have carefully considered Appellants' remaining points of error, and they are hereby overruled.

The trial court's order appointing the Receiver is hereby reformed by deletion of those portions in the manner hereinabove set out and as raised by Appellants' points five, six, and seven, and as reformed, in all other respects the actions of the trial court are affirmed.

Reformed and affirmed.