Bernie BRAY, d/b/a Airline Wrecker
Service, Appellant,

v.

Billy CURTIS, Jr., Appellee.

No. 1133.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 9, 1976.

Rehearing Denied Dec. 30, 1976.

Richard W. Crews, Jr., Corpus Christi, for appellant.

Jack P. Kelso, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for damages by Billy Curtis, Jr. under the Deceptive Trade Practices Act and a counterclaim by Bernie Bray, d/b/a Airline Wrecker Service, for towing and storage charges on Curtis' car and for foreclosure of a lien on the car for such charges. The trial court entered judgment after a jury trial, unsatisfactory to both parties. Whereupon both Bray and Curtis have appealed to this Court.

During the summer of 1975, Curtis was being pursued by a police officer on Padre Island near Corpus Christi. Curtis was driving a Ford Ranger pick-up truck. He eventually ended up in the surf near Bob Hall Pier on Padre Island. The police officer arrested Curtis and charged him with D.W.I. The officer then called his dispatcher and asked that a wrecker be summoned to remove the pick-up truck from the surf. Bray's Airline Wrecker Service responded to this request, pulled the truck from the surf and towed it to his place of business where it was stored.

The following day, Curtis went to Bray's place of business to get his truck. He was told that he must pay $75.00 for the towing fee and $1.00 for storage. The next day, Curtis returned to the Airline Wrecker Service place of business and offered Bray's wife $35.00 for the release of the truck. This offer was refused and Curtis made no further attempt to obtain the release of his truck until the present suit was filed alleging unconscionable conduct on the part of Bray's Airline Wrecker Service in charging an unreasonable amount for towing the vehicle. Curtis alternatively pled that Bray had unlawfully converted his pick-up truck to his own use. Curtis sought damages under the Deceptive Trade Practices Act in the amount of $735.00, or in the alternative, for the reasonable rental value for the loss of use of his vehicle for 162 days.

Bray denied Curtis' claim for damages and filed a cross-action seeking $75.00 for his towing fee, $1.00 per day for storage and foreclosure of his lien under Articles 5502, 5503 and Article 9.310 of the Business and Commerce Code. In addition, he sought attorney's fees of $150.00 for the collection of the service charges and $750.00 in attorney's fees for the defense of Curtis' suit under the Deceptive Trade Practices claim.

The trial was to a jury. Upon the conclusion of the presentation of the evidence, the jury found as follows:

1. That the $75.00 charge for wrecker service was not unreasonable.

2. That $75.00 was a reasonable towing charge.

3. That the reasonable market value of the truck was $500.00.

4. That Bernie Bray's actions in charging the wrecker service fee were not unconscionable.

5. That Bernie Bray's action in keeping possession of the truck until the wrecker service fee was paid was not unconscionable.

6. That Billy Curtis did not bring a groundless lawsuit or a harassing lawsuit.

7. That $675.00 was a reasonable attorney's fees for appellant's attorney.

8. That the reasonable value of the use of a similar truck for the period in question was $1,950.00.

Based on these findings by the jury, the trial judge entered a judgment giving Curtis possession of his truck, and ordered Curtis to pay Bray the $75.00 towing charge. The trial judge disregarded the jury's answers to special issues 3 (market value of the truck), 7 (attorney's fees in the amount of $675.00), and 8 (reasonable value of the loss of use of the pick-up truck, $1,950.00). The trial court denied all other relief sought by both parties.

The main question presented by Bray's points of error and Curtis' cross-points of error can be determined by deciding whether or not the Bray's Airline Wrecker Service had a possessory lien on the Curtis' pick-up truck for the towing and storage charges. Bray alleges the existence of a lien under three different theories: 1) by statutory lien; 2) by an equitable lien; and 3) by a common law lien.

■ Article 5502, Tex.Rev.Civ.Stat.Ann., states in part:

"Proprietors of livery or public stables *shall have a special lien . . . Upon such* carriages, buggies or *other vehicles as may have been placed in their care, for the amount of the charges against the same; . . .*" (Emphasis supplied.)

Historically, the Courts of Texas have modernized the old statutes and constitutional provisions and have updated them to apply to modern vehicles and situations. It is clear that the intent of this statute is to give those who store vehicles, a lien, not only for their storage charges, but also for the amount of charges that are against the vehicle. This, we believe, would also include the towing of the vehicle to the place for storage.

It is undisputed that the law enforcement officer directed Bray, through his dispatcher, to pull the vehicle from the surf and tow it to Bray's property for safekeeping. Article 6701d, § 94, Tex.Rev.Civ.Stat.Ann., authorizes an arresting officer to remove a vehicle from the scene of the arrest when the driver must be taken before a magistrate. See also Article 14.06, Tex.Code Crim.Proc.Ann., Article 2.13, Tex.Code Crim.Proc.Ann. and Article 6701d, § 21. In addition, the "Texas Abandoned Motor Vehicle Act", Article 6687–9, § 6, authorizes a law enforcement officer to impound and store abandoned vehicles and a garagekeeper to enforce his lien for storage. Section 6 of that Act specifically requires garage owners to report vehicles left with them more than 10 days. This Act goes on to say: ". . . Except for the termination of claim for storage for failure to report an abandoned motor vehicle, nothing in this section shall be construed to impair any lien of a garagekeeper under the laws of this State."

■ In addition, Article 5506, Tex.Rev. Civ.Stat.Ann., provides:

"Nothing in this title shall be construed or considered as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law or in equity, or by any statute of this State, or any other lien not treated of under this title."

As part of the privilege of driving a vehicle in this State, a licensed driver, impliedly agrees to allow a peace officer to have his vehicle towed and stored when the driver either commits some statutory offense or even when such vehicle becomes immobilized and it requires the officer to remove either the driver from his vehicle or his vehicle from the scene of an accident. Otherwise, these vehicles would constitute a

hazard to traffic and would be subject to theft, vandalism or in the case at bar destruction by the elements.

Curtis cites a number of out of state cases which hold that towing and/or storage by a garagekeeper would not entitle him to a lien for his services. In addition, Curtis argues that he did not give his expressed consent for such services. The out of state cases cited by Curtis are not applicable because of the absence of a similar statute granting a lien such as Article 5502. Although Curtis did not give, or he was unable to give his expressed consent as the case might have been, the statute (Article 5502) clearly authorizes a lien where the garagekeeper came into possession of the vehicle lawfully. This was the exact case which is before us.

■ Additionally, Bray had an equitable lien for both the towing and storage charges. An equitable lien is recognized in Texas when the surrounding circumstance indicates that the parties to the transaction intended that certain property would secure the payment of a debt. *Citizens Co-op Gin v. United States*, 427 F.2d 692 (5th Cir. 1970); *Williams v. Greer*, 122 S.W.2d 247 (Tex.Civ.App.—Dallas 1938, no writ). The fundamental element necessary to create an equitable lien is the existence of an express or implied contract and it does not arise except out of a contract between the parties. *Barfield v. Henderson*, 471 S.W.2d 633 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *Bradley v. Straus-Frank Company*, 414 S.W.2d 504 (Tex.Civ.App.—Dallas 1967, no writ); *Batson v. Coley & Wilson*, 59 S.W.2d 445 (Tex.Civ.App.—Waco 1933, no writ); *Vivion v. Nicholson*, 54 Tex. Civ.App. 43, 116 S.W. 386 (1909, no writ). An equitable lien secured by an implied agreement can be applied in this case because of the relationship of the parties and the circumstances of their dealings. Courts of equity will apply the relations of the parties and circumstances of their dealings in establishing a lien based on rights and justice. *The First National Bank in Big Spring v. Conner*, 320 S.W.2d 391 (Tex.Civ. App.—Amarillo 1959, writ ref'd n. r. e.).

■ One further note concerning the lien under Article 5502. This type of lien is a possessory lien since the statute does not provide for any other method of perfecting the lien by recordation or otherwise. The trial court erred in giving Curtis possession of the vehicle before the charges for the wrecker service and storage had been paid by Curtis.

■ Finally, Curtis complains of the trial court's refusal to award him $1,950.00 in damages for the conversion of his vehicle. Since Bray was in proper legal possession, no conversion existed. This point of error is overruled.

■ In his final point of error, Bray complains of the action of the trial court in failing to award him the $675.00 which the jury found to be reasonable attorney's fees. This award by the jury was a combination of attorney's fees in: 1) prosecuting the cross-action for towing and storage charges; 2) for defense of the Deceptive Trade Practices Act claim; and 3) for the defense of the conversion claim. During the trial, the only evidence presented by Bray was that his attorney had spent 15 hours working on this case and that his attorney charged $45.00 per hour. Bray submitted special issue No. 7 to the jury which asked what was a reasonable attorney's fees for the services performed in the case by Bray's attorney. The jury responded with the figure of $675.00. Curtis objected to the submission of the special issue (No. 7) stating in effect that the evidence failed to specify what attorney's fees were incurred by Bray in his affirmative action to collect for his services and his defense of the Deceptive Trade Practices claim and the conversion. This objection was good and should have been sustained by the trial court.

The question presented by Bray's point of error is whether or not Bray was entitled to collect attorney's fees for: 1) the cross-action for collection of a claim for labor and services; 2) defense of a Deceptive Trade Practices Act claim; and 3) defense of a claim for conversion although the evidence

failed to specify the amount of time spent on each aspect of the lawsuit. Article 2226, Tex.Rev.Civ.Stat.Ann. (Supp.1976), states, in part, that: [a]ny person . . . having a valid claim against a person . . . for services rendered, labor done, . . . may present the same to such persons . . . and if, . . . the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such persons . . . he may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. . . ." Bray's cross-action for his towing charges was clearly the type of action contemplated by Article 2226. Actually, Curtis admits that Bray is entitled to fees for these services.

Section 17.50(c), Tex.Bus. & Comm.Code Ann. (Supp.1976), Competition & Trade Practices—"Relief for Consumers", states that when an action is brought by a consumer which is groundless, in bad faith, or for the purpose of harassment, the court may award the defendant reasonable attorney's fees.

 In response to special issue No. 6, the jury found that the suit brought by Curtis was not groundless or brought by Curtis for the purpose of harassment. Therefore, Bray was not entitled to recover attorney's fees for the defense of the Deceptive Trade Practices claim brought against him by Curtis. In addition, there is absolutely no authority by which a successful defendant in a conversion suit may recover his attorney's fees for the defense of such a suit.

 It is a well settled rule of law that unless attorney's fees are provided by statute, or by a contract between the parties, such fees are not recoverable against an adversary either in an action in tort or a suit upon a contract. Attorney's fees incurred in prosecuting a suit for, or defending against a wrong, are not ordinarily recoverable as actual damages. *Buck v. Johnson,* 495 S.W.2d 291 (Tex.Civ.App.—Waco 1973, no writ). See *New Amsterdam Casualty Company v. Texas Industries, Inc.,* 414 S.W. 914 (Tex.Sup.1967); *Innes v. Webb,* 538 S.W.2d 237 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.).

Actually, two special issues on attorney's fees should have been submitted to the jury. The first would have been predicated on an affirmative answer to special issue No. 6 which would have authorized collection of attorney's fees in defense of a groundless Deceptive Trade Practice claim. The second issue would have been a separate issue on attorney's fees incurred in the collection of fees for services rendered (special issue No. 2). There was no evidence of what was a reasonable attorney's fees for the specific work performed in each category. As was stated earlier, the only evidence of attorney's fees was that the appellant's attorney spent 15 hours in preparation and trial of the whole case. Bray did not offer specific evidence of how much his attorney's time was spent in the area for which Bray would have been entitled to collect attorney's fees.

Although the trial court erred in not sustaining Curtis' objection to special issue No. 7, and in submitting the issue to the jury, he later corrected this error by disregarding the jury's answer to the issue and in not awarding any attorney's fees to Bray in the judgment. Bray's point of error No. 4 is overruled.

The undisputed evidence was that the storage charge of $1.00 per day was reasonable. The judgment of the trial court is, therefore, REVERSED AND the cause is REMANDED with instructions to enter judgment for the amount of the storage fee ($75.00) and for the storage charges in the amount of $1.00 per day during such time that Bray stored the vehicle. The trial court shall enter its further order placing Curtis' vehicle in the possession of Bray until such judgment for towing and storage charges have been paid. Costs are assessed two-thirds (⅔) against Curtis and one-third (⅓) against Bray.

AFFIRMED IN PART and REVERSED AND REMANDED WITH INSTRUCTIONS IN PART.