Daniel Connors *v.* Anthony Wilkinson et al.

Court of Common Pleas          Geographical Area No. 19

File No. CV19-7704-00465

Memorandum filed February 1, 1978

*Leary & Fahey,* for the plaintiff.

*King, Dubeau & Ryan,* for the defendants.

Spada, J.   The issue raised in the case at bar is whether the owner of a motor vehicle seized by the police incident to a lawful arrest is liable to a private wrecker service operator for towing and storage charges.  The question is one of first impression in the state of Connecticut.

After a trial had on December 1, 1977, the facts of the case could be summarized as follows:  On March 5, 1976, the plaintiff, a wrecker service operator, received a call from the state police asking him to go to the defendants' residence, to remove the named defendant's vehicle and to garage that vehicle until further notice.  The named defendant, hereinafter the defendant, had been involved earlier in an automobile accident on a public highway located approximately one mile from his home.  The defendant's vehicle was towed by the plaintiff to

his garage where it was inspected and examined by the police. Evidence adduced from the examination led to the defendant's arrest on a criminal charge. Although no search or seizure warrant had been procured, the parties to this hearing have stipulated that the search and seizure were legal. It was further agreed that the defendant had never authorized or consented to the removal of his vehicle. In a separate proceeding the defendant's vehicle was released to him after a bond was posted.

The plaintiff, on March 25, 1976, instituted a small claims action against the defendant and his wife seeking $340 in damages for towing and service charges. The defendant and his wife concede that this sum is reasonable. The action was transferred on April 14, 1977, to the regular docket of the Court of Common Pleas and was subsequently heard on December 1, 1977.

The question of whether the owner of a motor vehicle seized from his garage by a private wrecker operator at the request of the police is obliged to pay for towing and storage charges is answered neither in the General Statutes nor in Connecticut case law. The plaintiff contends that his claim is authorized by General Statutes § 14-150 (b). This court cannot agree with that contention.

Section 14-150 (b), states, in pertinent part, that "any state police officer, upon discovery of any motor vehicle, whether situated within or without any highway of this state, *which is a menace to traffic,* shall take such motor vehicle into his custody and may cause the same to be taken to and stored in a suitable place." (Emphasis added.)

The defendant's vehicle was neither abandoned nor unregistered. Furthermore, the gravamen of § 14-150 (b) is found in the clause "which is a menace to traffic." That clause limits the police power

to remove only those vehicles which present "a menace to traffic." The uncontradicted evidence established that the defendant's vehicle was properly and safely garaged on his private property at the time the plaintiff seized it. It constituted no menace to traffic.

The plaintiff understandably argues that "the purpose of this statute seems to be to reimburse expenses to those who tow and store vehicles at the direction of the police." That is a conclusion with which this court cannot agree.

"We must construe and apply the statute as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." *Granniss* v. *Weber,* 107 Conn. 622, 630. Further, "[i]t is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. This intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous." *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73.

A reading of the statutes reveals that the legislature intended to discourage the imposition of towing and storage fees. The General Assembly, under General Statutes § 14-150 (c), provided that an abandoned or unregistered vehicle not constituting a menace to traffic was to have affixed to it a notification sticker warning the owner that, unless the vehicle was removed within twenty-four hours, he could be liable for towing and storage. Neither § 14-150 (b) nor § 14-150 (c) is supportive of the plaintiff's claim.

In further support of his claim, the plaintiff cites the decision of *Bray* v. *Curtis,* 544 S.W.2d 816 (Tex. Civ. App.). The facts of that case are easily distinguishable from those of the present case. In *Bray,* the police, after hot pursuit, arrested the

defendant for drunk driving. At the conclusion of the chase the defendant's vehicle was mired in the surf of a public beach. A wrecker service was dispatched to remove the vehicle and to garage it.

In a trial contesting the legality of the towing and storage charges, the Texas court found, not surprisingly, in favor of the wrecker service. The court made reference (p. 818) to article 6701d, § 94, Tex. Rev. Civ. Stat. Ann., wherein an arresting officer is empowered "to remove a vehicle from the scene of the arrest when the driver must be taken before a magistrate." The Texas court found (pp. 818–19) that "[a]s part of the privilege of driving a vehicle . . . a licensed driver . . . impliedly agrees to allow a peace officer to have his vehicle towed and stored. . . . Otherwise, these vehicles would constitute a hazard to traffic and would be subject to theft, vandalism or in the case at bar destruction by the elements." It is clear that the implied consent to tow one's vehicle is dependent upon either the elimination of a traffic hazard or the creation of a benefit to the motor vehicle owner.

In the case before this court, neither circumstance was present to warrant an invocation of the "implied consent" theory of contract. The *Bray* case, supra, does not represent controlling authority to support the plaintiff's position. The plaintiff argues that a Connecticut operator "must agree to abide by the rules and regulations of the department of motor vehicles and of the state and local police." No such rules or regulations were presented to the court for examination, nor is the court aware of any of which it might take judicial notice.

The plaintiff's reference to *Edwards* v. *Hartford*, 145 Conn. 141, yields him nothing. The *Edwards* case held constitutional an ordinance of the city

of Hartford permitting the police to remove to a vehicle pound any vehicle found parked in a place where parking was not permitted.

Although the plaintiff failed to allege facts which could, if proven, contractually bind the defendant, this court feels compelled because of the significance of this case to examine the contractual relations, if any, between the parties. It is clear that no express contract existed between the plaintiff and the defendant. The evidence shows unassailably that the plaintiff towed away the defendant's vehicle at the request of the police and contrary to the defendant's express orders.

Do the circumstances warrant a finding of an implied contract? This court does not believe so. To render the party for whom services are performed liable as a debtor under an implied promise, " 'it is essential to show that they were rendered under such circumstances as make it fairly presumable that the party allowing them to be rendered and receiving the benefit to be derived from them expected, or at least ought to have expected, that they were to be paid for.' " *State* v. *Newman,* 140 Conn. 214, 218.

It is manifest that the defendant received no benefit. Conversely, the deprivation of his motor vehicle caused him a severe hardship. If a benefit accrued, it inured to the police who initiated the seizure.

The possibility of a quasi contract is discounted because of the absence of an unjust enrichment. The latter is an essential ingredient to support a claim founded on quasi contract. *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242. "It is clear that in order to recover on the basis of unjust enrichment, it is necessary for a plaintiff to demonstrate two aspects of the transaction. First, it must be shown that the defendant was benefited; that is,

he has received something of value. And second, it must be shown that the benefit was unjust . . . ." *Providence Electric Co.* v. *Sutton Place, Inc.,* supra, 246. The court concludes that no basis of contract, express, implied or quasi, exists by which damages can be assessed in favor of the plaintiff.

The defendant contends that no costs of prosecution under General Statutes § 54-143 could be taxed against him, except as might be imposed on appeal to the Supreme Court. Since it is not necessary for the resolution of this case to comment on the defendant's argument, this court does not address it.

The defendant and his wife are codefendants although the named defendant was the sole registered owner of the vehicle. For these purposes, they have been treated individually. The court concludes that the plaintiff has failed to sustain his burden by a preponderance of the evidence.

Accordingly, judgment may enter in favor of both defendants.