NO. 07-03-0343-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 12, 2005

_____

PHYLIS CHORMAN, APPELLANT

V.

DALTON MCCORMICK, APPELLEE

_____

FROM THE 253RD DISTRICT COURT OF LIBERTY COUNTY;

NO. 61,244; HONORABLE RICHARD MILLARD, JUDGE

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

This is an appeal from a judgment imposing an equitable lien on a tract of land in Liberty County, Texas. We will reverse and render judgment for appellant.

Background

Appellant, Phylis Chorman, was married to Ronald McCormick. Appellee, Dalton McCormick, is the father of Ronald McCormick.[1] Ronald and Phylis wanted to buy

---

[1] For convenience and brevity, we will refer to the three by their first names.

approximately twelve acres of land in Liberty County. In 1976, Dalton purchased the property for $30,000, paying $15,000 down with the additional $15,000 payable within a year. The sellers conveyed the property to Dalton, reserving a lien, which they later released on Dalton's payment of the $15,000. Ronald signed a note payable to his father for $15,000, and Phylis and Ronald moved onto the property.

In 1977, Dalton conveyed the property by general warranty deed to the Veterans Land Board of Texas ("VLB"). Ronald executed an installment contract calling for his purchase of the property from the VLB for $15,000, payable with interest over a term of forty years. Phylis and Ronald divorced in 1986. The divorce decree did not partition the twelve acres,[2] but gave Phylis sole possession of the property until their younger child "has his disabilities removed, graduates from high school or dies" and ordered Phylis and Ronald each to make half of the bi-annual VLB payment.

In the trial court, Phylis testified that she continued to make payments to the VLB after the divorce. Ronald testified that he and Phylis defaulted in the payments. Ronald further testified that he received a notice of "foreclosure" from the VLB. Phylis denied knowledge of such a notice.

In any event, Ronald and Dalton traveled to the VLB office in Austin and Dalton paid the remainder of the amount owed under the installment contract, totaling about $15,000. Ronald testified he talked to Phylis about his father's offer to pay off the land and she did not

---

[2] The parties agree that following the divorce decree Ronald and Phylis owned the twelve acres as tenants in common.

2

object. Phylis testified that she did not learn until afterwards that Dalton had paid off the property.

On October 8, 1990, the VLB issued its deed conveying the twelve acres to Ronald, but expressly subject to the divorce decree. Dalton testified that Ronald gave him a quitclaim for his interest in the property. Dalton also obtained his son's interest through a constable's deed on August 28, 1990, which enforced a $15,000 judgment Dalton obtained against Ronald on his 1976 note. Thus, Dalton claims a one-half undivided interest in the twelve acres as a tenant in common with Phylis. Phylis has remained in possession. She and Dalton had no express agreement concerning reimbursement to him for the funds he paid the VLB, nor has she signed any document giving Dalton a lien on the property.

On December 21, 2000, Dalton filed his original petition in the trial court, seeking the imposition of an equitable lien on Phylis's half interest in the property based on his payment of the $15,000 to the VLB. After a bench trial, the trial court issued findings of fact and conclusions of law and found, in part, that (1) after Ronald and Phylis defaulted in the payments to the VLB, Dalton "paid the principal due and owing on their behalf to keep the property from being foreclosed upon" and (2) Phylis accepted the benefits of Dalton's act and payment to save the property from foreclosure and has not reimbursed any of the purchase money to him. The trial court concluded that Dalton could not be restored to his former rights of reimbursement without an equitable lien being imposed on the property for the purchase price so that unjust enrichment will not result to Phylis.

3

The court later signed the final judgment made the subject of this appeal, in which it gave Dalton an equitable lien against the twelve acres "in the amount of $7,500.00."

## Equitable Lien

Case law says an equitable lien is not an estate in the thing to which it attaches, but merely an encumbrance against the property to satisfy a debt. *Day v. Day*, 610 S.W.2d 195, 199 (Tex.Civ.App.–Tyler 1980, writ ref'd n.r.e.). An equitable lien arises when the surrounding circumstances indicate the parties to the transaction intended that certain property would secure the payment of a debt. *Bray v. Curtis*, 544 S.W.2d 816, 819 (Tex.Civ.App.–Corpus Christi 1976, writ ref'd n.r.e.). The fundamental element necessary to create an equitable lien is the existence of an express or implied contract. *Id.* It is not necessary that a lien is created by express contract or by operation of statute. *First Nat'l Bank in Big Spring v. Conner*, 320 S.W.2d 391, 394 (Tex.Civ.App.–Amarillo 1959, writ ref'd n.r.e.). Courts of equity will apply the relations of the parties and the circumstances of their dealings in establishing a lien based on right and justice. *Id.*; *Bray*, 544 S.W.2d at 819.

## Limitations

In the trial court, Phylis contended Dalton's effort to impose an equitable lien was barred by limitations. She renews that contention in her first issue on appeal. We agree.

Dalton argues section 16.004 of the Texas Civil Practice and Remedies Code has no application because his suit was one to impose an equitable lien and not to enforce a debt.

4

However, it does not follow that there is no applicable statute of limitations.[3]  As a general rule, statutes of limitations apply to actions seeking equitable relief.  *Railroad Commission v. Beacon*, 227 S.W.2d 293, 296 (Tex.Civ.App.–Austin 1950, writ ref'd n.r.e.)*; Huggins v. Johnston*, 3 S.W.2d 937, 941 (Tex.Civ.App.–Waco 1927, writ granted), *aff'd*, 35 S.W.2d 688 (Tex. 1931); *see Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (the residual four-year statute of limitations contained in section 16.051 of the Texas Civil Practice and Remedies Code applies to equitable bills of review).  *See also Burnham v. Todd*, 139 F.2d 338, 343 (5th Cir. 1943) (article 5529, the predecessor statute to section 16.051 of the Texas Civil Practice and Remedies Code, applies in Texas to rights of an equitable nature); *Isaacs v. Neese*, 75 F.2d 566, 569 (5th Cir. 1935) (for a suit in equity for which no specific limitations statute is provided, the general limitation of four years applies).  *See generally* 50 TEX. JUR. 3D *Limitation of Actions* § 15 (2000) (the law of limitations applies alike in equity cases as in cases at law); 34 TEX. JUR. 3D *Equity* § 41 (2002) (statutes of limitations apply to equitable actions).  We see no reason why section 16.051 of the Texas Civil Practice and Remedies Code, containing the residual four-year statute of limitations, would not apply here.[4]

---

[3] We review the application of limitations to the undisputed facts as a question of law.  *Musgrave v. Brookhaven Lake Property Owners Ass'n*, 990 S.W.2d 386, 397 (Tex. App.–Texarkana 1999, pet. denied).

[4] Section 16.051 provides, "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."

Dalton refers us to two opinions that he contends refute the application of limitations to his claim.[5] The first is *Adams v. Jones*, 107 S.W.2d 450 (Tex.Civ.App.–Texarkana 1937, writ dism'd). In *Adams*, plaintiffs recovered title and possession of 130 acres of land under a trust theory but appealed that part of the judgment granting the defendant an equitable lien to secure his reimbursement for a prior mortgage debt the defendant paid. Responding to the plaintiffs' contention that the equitable lien was barred because more than four years had elapsed since the defendant paid the debt, the appeals court noted that the plaintiffs had waited more than ten years to assert the alleged trust agreement, and equity would permit the defendant to assert his equitable lien under that circumstance. *Id*. Dalton is not in the position of a defendant against whom a ten-year-old claim has been brought. Too, as Phylis points out, the court's analysis of the parties' contentions in *Adams* was cut short because of briefing inadequacies. *Id.* at 451. *Adams* does not support an assertion that limitations does not apply to Dalton's claim.

Dalton next refers us to *Turner v. Hunt*, 116 S.W.2d 688 (Tex. 1938), which we also find distinguishable from the matter before us. In *Turner*, owners of an 82-acre tract of land conveyed 24 described acres out of the tract to Neal Turner in 1924. *Id*. at 689. As a part of the conveyance, Turner also was permitted to select an additional acre for a home site. Turner made no selection of the additional acre until 1934 after oil wells had been completed on the 82-acre tract. The one acre selected was the land in controversy. *Id*.

---

[5] Dalton elsewhere cites *Richards v. Suckle*, 871 S.W.2d 239 (Tex. App.–Houston [14th Dist.] 1994, no pet.), a case applying the doctrine of equitable subrogation. Dalton has not asserted he was equitably subrogated to the VLB's position under its installment contract with Ronald.

6

The *Turner* defendants argued the evidence demonstrated plaintiffs were barred from asserting a right to the land in controversy by laches. The court found Neal Turner acquired (aside from the 24 acres) only an equitable right to choose and have surveyed the additional one-acre tract. *Id*. at 690. The court further found that Turner's delay of a little less than ten years did not defeat his right to select the one-acre tract. *Id*. at 691.

We do not deal here with the question whether laches bars the exercise of an equitable right to select a tract of land, but whether limitations bars Dalton's suit for imposition of an equitable lien. The language of the *Turner* opinion itself points out the distinction. The court there noted, "The question is not strictly one of delay in instituting suit after the accrual of the cause of action, which is usually determinable by the period of limitation fixed by statute. Here the delay is in asserting the right by making selection of the particular acre." *Id*. at 691.[6]

Dalton's claim to an equitable lien on Phylis's interest in the property is based on his payment to the VLB, which undisputedly occurred before the date of the VLB's deed to Ronald on October 8, 1990. Nothing prevented his initiation of suit at any time after he paid off the property. Limitations barred his doing so in December 2000. We sustain Phylis's first issue.

---

[6] Indeed, *Turner* has been cited for the proposition that statutes of limitations apply to equitable actions as well as to legal actions. *See Culver v. Pickens*, 176 S.W.2d 167, 170 (Tex. 1943).

## Conclusion

Because the first issue on appeal is dispositive, we do not address Phylis's second issue by which she challenges the sufficiency of the evidence supporting the judgment. We reverse the judgment of the trial court and render judgment that appellee Dalton McCormick take nothing.


James T. Campbell
Justice